PARIENTE, J.,
specially concurring.
I concur fully in the majority opinion. I write only to address two aspects of' the rules that we amend. First, with regard to the administrative fee imposed on lawyers who are found guilty of committing misconduct, the current fee of $750 has not been amended since 1994, during which time costs of the disciplinary process have risen 80.6%. The Bar estimates that in the 2001-2002 fiscal year, it spent over $8 million in lawyer discipline. Thus, this Court’s approval of a $1250 administrative fee represents only a modest increase.
I join in the Court’s refusal to adopt the Bar’s proposal of a sliding scale of administrative fees because this might create a disincentive for an attorney to exercise his or her right to contest disciplinary charges. I would, however, go one step further than the across-the-board $500 increase. I would approve an increase of the administrative fee to $2500 in cases in which the respondent appeals the referee’s finding to the Supreme Court, unless this Court reduces the referee’s recommended discipline. Thus, the $1250-fee would not be increased in cases in which the Bar appeals or in cases in which this Court reduces the referee’s recommended discipline. I also remain open to reconsidering the entire issue of administrative fees and in particular the use of sliding scales, with the goal that the costs of maintaining lawyer discipline are more equitably assessed against those lawyers who commit misconduct.
The second area that I address is the amendment to rule 4-8.4(i) regarding prohibited sexual relationships with clients. This rule was amended in response to a request set forth in my concurring opinion in Florida Bar v. Bryant, 813 So.2d 38, 44-46 (Fla.2002). In that concurrence, I urged the Bar to consider a prohibition on all sexual relationships between lawyers and their clients during the attorney-client relationship. As I stated at that time, “there are simply far too many circumstances where a sexual relationship between the lawyer and client creates the potential for adversely affecting the attorney-client relationship, including increased vulnerability on the part of the client and *459 compromised decision-making on the part of the lawyer.” Id. at 45. Although the Bar did not propose a ban on sexual relationships between attorneys and clients, I commend the Bar for strengthening the rule. I further request that this rule be assessed periodically to ensure that it operates to guarantee that the attorney-client relationship is not compromised in any regard as a result of an ongoing sexual relationship.
Lastly, I join in commending all of those individuals who worked so hard on these amendments and additionally commend those attorneys who provided constructive comments on the amendments. This process is often labor-intensive but reflects the commitment of the Bar and this Court to promote the highest standards of ethics and professionalism in order to best serve the citizens of this State.
CANTERO, J., concurs.
APPENDIX
RULE 1-3.6 DELINQUENT MEMBERS
Any person now or hereafter licensed to practice law in Florida who fails to pay membership fees, or fails to comply with continuing legal education or basic skills course requirements, or is delinquent in the payment of costs assessed or restitution imposed in diversion cases or disciplinary proceedings brought under these Rules Regulating The Florida Bar shall be deemed a delinquent member. While occupying the status of a delinquent member, no person shall engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing. RULE 1-3.8 RIGHT TO INVENTORY
(a)Appointment; Grounds; Authority. Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons a practice, disappears, eddies, or suffers an involuntary leave, of absence due to military service, catastrophic illness, or injury, and no partner, personal representative, or other responsible party capable of conducting the attorney’s affairs is known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney (hereinafter referred to as “the subject attorney”) and to take such action as seems indicated to protect the interests of clients of the subject attorney.
(b) Maintenance of Attorney-Client Confidences. Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court that appointed the attorney to make the inventory.
(c) Status and Purpose of Inventory Attorney. ■ Nothing herein creates an attorney and cliept, fiduciary, or other relationship between the inventory attorney and the subject attorney. The purpose of appointing an inventory attorney is to avoid prejudice to clients of the subject attorney and, as a secondary result, prevent or reduce claims against the subject attorney for such prejudice as may otherwise occur.
(d) Rules of Procedure. The Florida Rules of Civil Procedure are applicable to proceedings under this rule.
RULE 1-7.3 MEMBERSHIP FEES
(a) Membership Fees Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned,’ been disbarred, or been classified as inactive members pursuant to rule 3-7.13, shall pay annual membership fees to The Florida *460 Bar in the amount set by the budget, provided that the board of governors shall not fix the membership fees at more than $265 per annum. At the time, of the payment of membership fees every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
Membership fees tendered to The Florida Bar shall not be accepted from any member who^ is delinquent in fee-payment of has not paid costs or restitution imposed against the member in a diversion case or disciplinary proceeding. — Costs shall-be deemed delinquent unless paid within 30 days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown; or has not made. — Rrestitution- shall be deemed delinquent'unless accomplished in the manner and by the date provided in the disciplinary order or agreement. A member who has not paid diversion or disciplinary costs or made restitution as required by this subdivision shall be deemed a delinquent member as defined elsewhere in these rules.
(b)Prorated Membership Fees. Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual membership fees' for that fiscal year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
Failure to pay prorated membership fees shall result in the amount of such prorated membership fees being added to the next annual membership fees billing to the member without penalty. The combined prorated and annual membership fees payment must thereafter be received by The Florida Bar on or before August 15, unless the member elects to pay by installment under this rule.
(c) Installment Payment of Membership Fees. Members of The Florida Bar may elect to pay annual membership fees in 3 equal installments as follows:
(1) in the second and third year of their admission to The Florida Bar; or
(2) if the member is employed by a federal, state, or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar. A member’s notice of election to pay
membership fees in installments under this rule and the first installment payment thereunder must be postmarked no later than August 15. The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.
Second and/or third installment payments postmarked after their respective due date(s) shall be subject to a one-time late charge of $50 per fiscal year, which shall accompany the final payment unless adjusted by the executive director with concurrence of the executive committee for good cause shown.
The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose membership fees and late fees have not been paid under this rule by February 1. Upon failure to pay membership fees and any late charges under this rule by March 15, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.
Each member who elects to pay annual membership fees in installments under this rule may be charged an additional administrative fee to defray the costs of this activity as set by the Board of Governors.
(d) Election of Inactive Membership. A member in good standing may elect by *461 August 15 of a fiscal year to be classified as an inactive member. Such election shall be made only by indication of such choice on the annual membership fees statement and payment of the prescribed annual membership fees. Failure to make the initial election by August 15 shall constitute a waiver of the member’s right to the election until the next fiscal year. Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules. The election of inactive status shall be subject to the restrictions and limitations elsewhere provided.
Membership fees for inactive members shall be set by the board of governors in an amount not to exceed $175 per annum.
(e) Late Payment of Membership Fees. Payment of annual membership fees must be postmarked no later than August 15. Membership fees payments postmarked after August 15 shall be accompanied by a late charge of $50 unless adjusted by the executive director with concurrence of the executive committee for good cause shown. The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose membership fees have not been paid by August 15. Upon failure to pay membership fees and any late charges by September 30, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.
BYLAW 2-9.4 ETHICS
(a) Rules of Procedure. The board of governors shall adopt rules of procedure governing the manner in which opinions on professional ethics may be solicited by members of The Florida Bar, issued by the staff of The Florida Bar or by the professional ethics committee, circulated or published by the staff of The Florida Bar or by the professional ethics committee, and appealed to the board of governors of The Florida Bar.
(b) Amendment. The adoption of, repeal of, or amendment to the rules authorized by subdivision (a) shall be effective only under the following circumstances:
(1) The proposed rule, repealer, or amendment shall be approved by a majority vote of the board of governors at any regular meeting of the board of governors.
(2) The proposal thereafter shall be published in The Florida Bar News at least 20 days preceding the next regular meeting of the board of governors.
(3) The proposal shall thereafter receive a majority vote of the board of governors at its meeting following publication as herein required.
(c) Waiver. The rules of procedure adopted as required in subdivision (a) may be temporarily waived as to any particular matter only upon unanimous vote of those present at any regular meeting of the board of governors.
(d) Confidentiality. Each advisory opinion issued by Florida Bar ethics counsel shall be identified as a “staff opinion” and shall be available for inspection or production. The names and any identifying information of any individuals mentioned in a staff opinion shall be deleted before the staff opinion is released to anyone other than the member of The Florida Bar making the original request for the advisory opinion.
(e) Disqualification as Attorney Due to Conflict.
(1) Members of the Professional Ethics Committee (PEC), Members of *462 the Board of Governors, and Employees of The Florida Bar. No member of the PEC or the board of governors or employee of The Florida Bar shall represent a party other than The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these Rules Regulating The Florida Bar.
(2) Former Members of the PEC, Former Board Members, and Former Employees. No former member of the PEC, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than in proceedings for the issuance of opinions on professional ethics authorized under these rules if personally involved to any degree in the matter while a member of the PEC, a member of the board of governors, or an employee of The Florida Bar.
A former member of the PEC, former member of the board of governors, or former employee of The Florida Bar who did not participate personally in any way in the matter or any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such matter, shall not represent any party except The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these rules for 1 year after such service without the express consent of the board.
(3) Partners, Associates, Employers, or Employees of the Firms of PEC Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Members of the firms of board of governors members or PEC members shall not represent any party other than The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these rules without the express consent of the board.
(4)Partners, Associates, Employers, or Employees of the Firms of Former PEC Members or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Attorneys in the firms of former board of governors members or former PEC members shall not represent any party other than The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these rules for 1 year after the former member’s service without the express consent of the board.
RULE 3-5.3 DIVERSION OF DISCIPLINARY CASES TO PRACTICE AND PROFESSIONALISM ENHANCEMENT PROGRAMS
(a) Authority of Board. The board of governors is hereby authorized to establish practice and professionalism enhancement programs to which eligible disciplinary cases may be diverted as an alternative to disciplinary sanction.
(b) Types of Disciplinary Cases Eligible for Diversion. Disciplinary cases that otherwise would be disposed of by a finding of minor misconduct or by a finding of no probable cause with a letter of advice are eligible for diversion to practice and professionalism enhancement programs.
(c) Limitation on Diversion. A respondent who has been the subject of a prior diversion within 7 years shall not be eligible for diversion.
(d) Approval of Diversion of Cases at Staff or Grievance Committee Level Investigations. The bar shall not offer a respondent the opportunity to divert a disciplinary case that is pending at staff or grievance committee level investigations to *463 a practice and professionalism enhancement program unless staff counsel, the grievance committee chair, and the designated reviewer concur.
(e) Contents of Diversion Recommendation. If a diversion recommendation is approved as provided in subdivision (d), the recommendation shall state the practice and professionalism enhancement program(s) to which the respondent shall be diverted, shall state the general purpose for the diversion, and the costs thereof to be paid by the respondent.
(f) Service of Recommendation on and Review by Respondent. If a diversion recommendation is approved as provided in subdivision (d), the recommendation shall be served on the respondent who may accept or reject a diversion recommendation in the same manner as provided for review of recommendations of minor misconduct. The respondent shall not have the right to reject any specific requirement of a practice and professionalism enhancement program.
(g) Effect of Rejection of Recommendation by Respondent. In the event that a respondent rejects a diversion recommendation the matter shall be returned for further proceedings under these rules.
(h) Diversion at Trial Level.
(1)Agreement of the Parties. A referee may recommend diversion of a disciplinary case to a practice and professionalism enhancement program - if the bar approves diversion as stated in subdivision — (d)—and the respondent agrees. Under these circumstances a conditional plea, as otherwise authorized by these rulesT may be-submitted to the referee for-review and approval. — The procedures for approval of conditional pleas provided elsewhere in these rules shall apply to diversion at the trial level.
(2) After Submission of Evidence. A referee may recommend diversion of a disciplinary case to a practice and professionalism enhancement program if, after submission of evidence, but before a finding of guilt, the referee determines that, if proven, the conduct alleged to have been committed by the respondent is not more serious than minor misconduct.
(3) Costs' of Practice and Professionalism Enhancement Program. A referee’s recommendation of diversion to a practice and professionalism enhancement program shall state the costs thereof to be paid by the respondent.
(4) Appeal of Diversion Recommendation. The respondent and the bar shall have the right to appeal a referee’s recommendation of diversion, except in the case of diversion agreed to under subdivision (h)(1).
(5) Authority of Referee to Refer a Matter to a Practice and Professionalism Enhancement Program. Nothing in this rule shall preclude a referee from referring a disciplinary matter to a practice and professionalism enhancement program as a part of a disciplinary sanction.
(i) Effect of Diversion. When the recommendation of diversion becomes final, the respondent shall enter the practice and professionalism enhancement program(s) and complete the requirements thereof. Upon respondent’s entry into a practice and professionalism enhancement program, the bar shall terminate its investigation into the matter and its disciplinary files shall be closed indicating the diversion. Diversion into the practice and professionalism enhancement program shall not constitute a disciplinary sanction.
(j) Effect of Completion of the Practice and Professionalism Enhancement Program. If a respondent successfully *464 completes all requirements of the practice and professionalism enhancement pro-gramas) to which the respondent was diverted, the bar’s file shall remain closed.
(k) Effect of Failure to Complete the Practice and Professionalism Enhancement Program. If a respondent fails to fully complete all requirements of the practice and professionalism enhancement program(s) to which the respondent was diverted, including the payment of costs thereof, the bar may reopen its disciplinary file and conduct further proceedings under these rules. Failure to complete the practice and professionalism enhancement program shall be considered as a matter of aggravation when imposing a disciplinary sanction.
(l) Costs of Practice and Professionalism Enhancement Programs. The Florida Bar shall annually determine the costs of practice and professionalism enhancement programs and publish the amount of the costs thereof that shall be assessed against and paid by a respondent.
RULE 3-6.1 GENERALLY
An authorized business entity (as defined elsewhere in these rules) may employ individuals subject to this rule to perform such services only as may ethically be performed by other lay persons employed by authorized business entities:
(a) Individuals Subject to This Rule. Individuals subject to this rule are suspended attorneys and former attorneys who have been disbarred or whose disciplinary resignations have been allowed.
(b) Definition of Employment. An individual subject to this rule shall be considered as an employee of an authorized business entity if the individual is a salaried or hourly employee or volunteer worker for an authorized business entity, or an independent contractor providing services to an authorized business entity.
(c)Employment by Former Subordinates. An individual subject to this rule may not, for a period of 3 years from the entry of the order pursuant to which the suspension, disciplinary resignation, or disbarment became effective, or until the individual is reinstated to the practice of law, whichever occurs sooner, be employed by or work under the supervision of another attorney who was supervised by the individual at the time of or subsequent to the acts giving rise to the order.
(ed) Notice of Employment. Before employment commences the employer shall provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the employee.
(de) Client Contact. No employee shall have direct contact with any client. Direct client contact does not include the participation of the employee as an observer in any meeting, hearing, or interaction between a supervising attorney and a client.
(ef) Reports by Employee and Employer. The employee and employer shall submit sworn information reports, quarterly based on a calendar year, to The Florida Bar. Such reports shall include statements that no aspect of the employee’s work has involved the unlicensed practice of law, that the employee has had no direct client contact, and that the employee did not receive, disburse, or otherwise handle trust funds or property.
RULE 3-7.1 CONFIDENTIALITY
(a) Scope of Confidentiality. All matters including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters *465 conducted in circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rulesherein. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.
Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons.
(1) Pending Investigations. Disciplinary matters pending at the initial investigatory and grievance committee levels shall be treated as confidential by The Florida Bar, except as provided in rules 3-7.1(e) and (k).
(2) Minor Misconduct Cases. Any case in which a finding of minor misconduct has been entered by action of the grievance committee or board shall be public information.
(3) Probable Cause Cases. Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered shall be public information. For purposes of this subdivision a finding of probable cause shall be deemed to have been made in those cases authorized by rule 3 3.2(a), for the filing of a formal complaint without the prior necessity of a finding of probable cause.
(4) No Probable Cause Cases. Any disciplinary case that has been concluded by a finding of no probable cause for further disciplinary proceedings shall be public information.
(5) Diversion or Referral to Grievance Mediation Program. Any disciplinary case that has been concluded by diversion to a practice and professionalism enhancement program or by referral to the grievance mediation program shall be public information upon the entry, of such a recommendation.
(6) Contempt Cases. Contempt proceedings authorized elsewhere in these rules shall be public information even though the underlying disciplinary matter is confidential as defined in these rules.
(7) Incapacity Not Involving Misconduct. Proceedings for placement on the inactive list for incapacity not involving misconduct shall be public information upon the filing of the petition with the Supreme Court of Florida.
(8) Petition for Emergency Suspension or Probation. Proceedings seeking a petition for emergency suspension or probation shall be public information.
(9) Proceedings on Determination or Adjudication of Guilt of Criminal Misconduct. Proceedings on determination or adjudication of guilt of criminal misconduct, as provided elsewhere in these rules, shall be public information.
(10) Professional Misconduct in Foreign Jurisdiction. Proceedings based on disciplinary sanctions entered by a foreign court or other authorized disciplinary agency, as provided elsewhere in these rules, shall be public information.
(11) Reinstatement Proceedings. Reinstatement proceedings, as provided elsewhere in these rules, shall be public information.
(12) Disciplinary Resignations. Proceedings involving petitions for disciplinary resignation, as provided elsewhere in these rules, shall be public information.
*466 (b) Public Record. The public record shall consist of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, recordings, and/or transcripts of hearings furnished to, served on, or received from the respondent or the complainant.
(c) Circuit Court Proceedings. Proceedings under rule 3-3.5 shall be public information. — Contempt proceedings authorized elsewhere in these rules shall-be public information even though the underlying disciplinary matter-is confidential as defined ⅛-these rules.
(d) Limitations on Disclosure. Any material provided to The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the public record, that portion of the public record may be sealed by the grievance committee chair, the referee, or the Supreme Court of Florida.
(e) Disclosure of Information. Unless otherwise ordered by this court or the referee ⅛ — proceedings under this - rule, nothing in these rules-s-hall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules-or — from'disclosing any documents or correspondence served on or provided to those persons.
(fe) Response to Inquiry. Authorized ¿Representatives of The Florida Bar authorized by^-the board- of governors shall respond to specific inquiries concerning matters that are in the public domain, but otherwise confidential under the rules, by acknowledging the status of the proceedings.
. (gf) Notice to Law Firms. When a disciplinary file is opened the respondent shall disclose to the respondent’s current law firm and, if different, the respondent’s law firm at the time of the act- or acts giving rise to the complaint, the fact that a disciplinary file has been opened. . Disclosure shall be in writing and in the following form:
A complaint of unethical conduct against me has been filed with The Florida Bar. The nature of the allegations are_This notice is provided pursuant to rule 3 — 7.1(g) of the Rules Regulating The Florida Bar.
The notice shall be provided within 15 days of notice that a disciplinary file has been opened and a copy of the above notice shall be served on The Florida Bar.
(h) Pending Investigations, — Disciplinary matters -pending at the initial investigatory-- and grievance — committee levels shall-be- treated as confidential — by The Florida- Bar, except-as-provided in rule 3-
(i) Minor — Misconduct—Cases,—Aay case in which a finding of minor- misconduct -has-been entered, by action of the grievance committee or board, shall become-public information.
(j) -Probable-Cause-Cases, — Any disciplinary- case in which a finding of-probable cause- for further disciplinary proceedings has been-entered shall be public-informa-⅛ — For purposes-of this subdivision a finding of probable-cause shall be deemed to have-been made-in-those cases ■ authorized by — rule 3-3.2(a), for the filing- of a formal complaint without the prior necessity of a-finding of probable cause.
(k) No Probable Cause Cases, — Any disciplinary case that has been concluded by a finding of no probable cause for further disciplinary proceedings-shal-l-become public-information.
*467 (⅛) Production of Disciplinary Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the public record, even if the disciplinary proceeding is confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(i»h) Notice to Judges. Any judge of a court of record upon inquiry of the judge shall be advised and, absent an inquiry, may be advised as to the status of a confidential disciplinary case and may be provided with a copy of documents in the file that would be part of the public record if the case was not confidential. The judge shall maintain the confidentiality of the records and shall not otherwise disclose the status of the case.
(m ) Evidence of Crime. The confidential nature of these proceedings shall not preclude the giving of any information or testimony to authorities authorized to investigate alleged criminal activity.
(a-j) Chemical Dependency and Psychological Treatment. That an attorney has voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems shall be confidential and shall not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the attorney who sought the treatment.
For purposes of this subdivision, an attorney shall be deemed to have voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems if the attorney was not under compulsion of law or rule to do so, or if the treatment is not a part of conditional admission to The Florida Bar or of a disciplinary sanction imposed under these rules.
It is the purpose of this subdivision to encourage attorneys to voluntarily seek advice, counsel, and treatment available to attorneys, without fear that the fact it is sought or rendered will or might cause embarrassment in any future disciplinary matter.
(pk) Response to False or Misleading Statements. If public statements that are false or misleading are made about any otherwise confidential disciplinary case, The Florida Bar may disclose all information necessary to correct such false or misleading statements.
(ql) Disclosure by Waiver of Respondent. Upon written waiver executed by a respondent, The Florida Bar may disclose the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:
(1) the Florida Board of Bar Examiners or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of an applicant for admission to practice law in that jurisdiction; or
(2) Florida judicial nominating commissions or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of a candidate for judicial office; or
(3) the governor of the State of Florida for the purpose of evaluating the character and fitness of a nominee to judicial office.
RULE 3-7.5 PROCEDURES BEFORE THE BOARD OF GOVERNORS
(a) Review of Grievance Committee Matters,
(1) - The- disciplinary review-committee shall review those grievance committee *468 matters referred-to ■ it by a-designated reviewed — The committee shall make a report-to-the board and unless overruled by the board the report shall be final.
(2) — Whenever a grievance matter is refer-red-to' the disciplinary review committee by the designated reviewer, the disciplinary — review—eammittae—shall promptly review the-actions of the grievance committee -and the recommendations--of the designated reviewer and make-a-report to-fche-board providing for
(A) an admonishment, which-the respondent may thereafter reject in the same manner as an admonishment recommended by-a^ grievance commit-
(B) confirmation of the formal complaint;
(C) reversal -of the grievance committee and a finding of no probable cause; or
(-D) return of the matter-to the grievance committee for further proceedings.
(3) -The- disciplinary review-committee report-shall be final unless overruled by the board. — If the board shall find no probable-cause, ban counsel shall notify the respondent, the grievance- committee, aad-the complaining witness.
(a) Review by the Designated Reviewer. Notice of grievance committee action recommending either diversion to a practice and professionalism enhancement program or finding either no probable cause, no probable cause with a letter of advice, minor misconduct, or probable cause shall be given to the designated reviewer for review. Upon review of the grievance committee action, the designated reviewer may request the grievance committee to reconsider its action or may refer the grievance committee action to the board of governors for its review. . The designated reviewer may request grievance committee reconsideration or refer the matter to the disciplinary review committee of the board of governors within 30 days of notice of grievance committee action. The request for a grievance committee reconsideration or referral to the disciplinary review committee shall be in writing. If the designated reviewer fails to make the request for reconsideration or referral within the time prescribed, the grievance committee action shall become final. Recommendations of the designated reviewer may include:
(1) referral of the matter to the grievance mediation program;
(2) referral of the matter to the fee arbitration program;
(3) closure of the disciplinary file by diversion to a component of the practice and professionalism enhancement program;
(4) closure of the disciplinary file by the entry of a finding of no probable cause;
(5) closure of the disciplinary file by the entry of a finding of no probable cause with a letter of advice;
(6) a finding of minor misconduct; or (7) a finding of probable cause that further disciplinary proceedings are warranted.
(b) Review by the Designated Review-eft — A designated reviewer may-review the actions of a grievance committee-. — fe order to allow-for review by-the designated-reviewer, notice of grievance committee aetion finding no probable'cause, no probable cause-wlth a letter of-advice-minor misconduct, or probable cause shall be given to the designated reviewer. — I-f-the designated ■ reviewer disagrees' with — the grievance eommittee action,-the designated reviewer shall make-a report and recommendation-.to the disciplinary revi- *469 committee? — The-designated reviewer shall make — &e—repast—and—recommendation within 2-1- days following the mailing date of the notice of grievance-committee action, — otherwise the grievance committee action shall become-final.
(b) Review of Grievance Committee Matters. The disciplinary review committee shall review those grievance committee matters referred to it by a designated reviewer and shall make a report to the board. The disciplinary review committee may confirm, reject, or amend the recommendation of the designated reviewer in whole or in part. The report of the disciplinary review committee shall be final unless overruled by the board. Recommendations of the disciplinary review committee may include:
(1) referral of the matter to the grievance mediation program;
(2) referral of the matter to the fee arbitration program;
(3) closure of the disciplinary file by diversion to a component of the practice and professionalism enhancement program;
(4) closure of the disciplinary file by the entry of a finding of no probable cause;
(5) closure of the disciplinary file by the entry of a finding of no probable cause with a letter of advice;
(6) a finding of minor misconduct; or
(7) a finding of probable cause that further disciplinary proceedings are warranted.
(c) Finding of-Probable CauseBoard Action on Review of Designated Reviewer Recommendations. The board, on the basis of the report of any regular-or special grievance committee-may by majority vote find-probable cause- and direct the filing of a formal complaint ■ against an attorney. — On review of a report and recommendation of the disciplinary review committee, the board of governors may confirm, reject, or amend the recommendation in whole or in part. Action by the board may include:
(1) referral of the matter to the grievance mediation program;
(2) referral of the matter to the fee arbitration program;
(3) closure of the disciplinary file by diversion to a component of the practice and professionalism enhancement program;
(4) closure of the disciplinary file by the entry of a finding of no probable cause;
(5) closure of the disciplinary file by the entry of a finding of no probable cause with a letter of advice;
(6) a finding of minor misconduct; or (7) a finding of probable cause that further disciplinary proceedings are warranted.
(d)Notice of Board Action. Bar counsel shall give notice of board action to the respondent, complainant, and grievance committee.
(de) Finding of No Probable Cause. A finding of no probable cause by the board shall be final and no further proceedings shall be had in the matter by The Florida Bar.
(ef) Control of Proceedings. Bar counsel, however appointed, at all times shall be subject to the direction of the board at all times. The board, Xin the exercise of its discretion as the governing body of The Florida Bar, the board-prior to-the receipt' of evidence-by the referee has the power to terminate disciplinary proceedings before a referee prior to the receipt of evidence by the referee, whether such proceedings have been instituted *470 upon a finding of probable cause by the board or a grievance committee.
(fg) Filing Service on Board of Governors. All matters to be filed with or served upon the board shall be addressed to the board of governors and filed with the executive director. The executive director shall be the custodian of the official records of The Florida Bar.
RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge’s circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
(c) Pretrial Conference. Within 60 days of the order assigning the case to the referee, the referee shall conduct a pretrial conference. The purpose of the conference is to set a schedule for the proceedings, including discovery deadlines and a final hearing date. The referee shall enter a written order in the proceedings reflecting the schedule determined at the conference.
(ed) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(de) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled “The Florida Bar, Complainant, v. (name of respondent), Respondent,” and “In The Supreme Court of Florida (Before a Referee).”
(ef) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(fg) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned.
(gh) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
(A) Filing. The complaint shall be filed in the Supreme Court of Florida.
(B) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against 1 or more respondents, and charges may be against any 1 or any *471 number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and Motion. The respondent shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent’s answer. The answer may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
(3) Reply. If the respondent’s answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent’s answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
(A) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
(B) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on staff counsel and bar counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a "reasonable time shall be given within which to respond thereto.
.(7) Expediting the Trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee’s discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint ’a successor.
(hi) Notice of Final Hearing. The cause may be set down for trial by eitlier party or the referee upon not less than 10 days’ notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent’s answer, or if no answer is filed, then from the date when such answer is due.
(¿-j) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, pa *472 pers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(jk) Complaining Witness. The complaining witness is not a party to the disciplinary proceeding, and shall have no rights other than those of any other witness. However, unless it is found to be impractical due to unreasonable delay or other good cause, and after the complaining witness has testified during the case in chief, the referee may grant the complaining witness the right to be present at any hearing when the respondent is also present. A complaining witness may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial. The complaining witness shall have no right to appeal.
(l) Parol Evidence. Evidence other than that contained in a written attorney-client contract may not be used in proceedings conducted under the Rules Regulating The Florida Bar to vary the terms of that contract, except competent evidence other than that contained in a written fee contract may be used only if necessary to resolve issues of excessive fees or excessive costs.
(km) Referee’s Report.
(1) Contents of Report. Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee’s report shall include:
(A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
(C) recommendations as to the disciplinary measures to be applied;
(D) a statement of any past disciplinary measures as to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
(E) a statement of costs incurred and recommendations as to the manner in which such costs should be taxed.
(2) Filing. The referee’s report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including staff counsel. The referee shall serve a copy of the record on bar counsel with the report. Bar counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
{I-n) The Record.
*473 (1) Recording of Testimony. All hearings at which testimony is presented shall be attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
(m-o) Plea of Guilty by Respondent.
At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee or bar counsel.
(2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(np) Cost of Review or Reproduction.
(1) The charge for reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules shall be as determined and published annually by the executive director. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to which the bar shall deliver the original documents to be copied, at the requesting party’s expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar’s consent.
(o-q) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
*474 (F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including of the respondent if acting as counsel; and
(I) an administrative fee in the amount of $7591250 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar’s costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Respondent’s Costs. When the bar is unsuccessful in the prosecution of a particular matter, the referee may assess the respondent’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.
Court Comment
A comprehensive referee’s report under subdivision (km) is beneficial to a reviewing court so that the court need not make assumptions about the referee’s intent or return the report to the referee for clarification. The referee’s report should list and address each issue in the case and cite to available authority for the referee’s recommendations concerning guilt and discipline.
RULE 3-7.9 CONSENT JUDGMENT
(a) Before Formal Complaint is Filed. If before a formal complaint is filed a
respondent states a desire to plead guilty to a grievance committee report that finds probable cause and recommends further disciplinary proceedings, then staff counsel shall consult established board guidelines for discipline,-with the approval of and confer with the designated board-reviewer and concurrence of the board of-governors, may consult established-board-guidelines for-diseipline, and advise the respondent-of the discipline that-will-be recommended to the Supreme Cour-t-of-Florida-if a written plea of-gullty is-entered. If staff counsel or the designated reviewer rejects the proposed consent .judgment, the matter shall not be referred to the board of governors. If staff counsel and the designated reviewer approve the proposed consent judgment, the respondent shall be advised that staff counsel and the designated reviewer will recommend approval of the respondent’s written plea, and the matter shall be placed on the agenda of the board of governors for its review. If the board of governors concurs in the consent judgment, bar counsel shall notify the respondent and file all necessary pleadings to secure approval of the plea. If the board of — governors or designated reviewer -re-jeets-a proposed consent judgment is rejected, bar counsel shall prepare and file a complaint as provided elsewhere in these rules.
(b) After Filing of Formal Complaint. If a respondent states a desire to plead guilty to a formal complaint that has been filed, then barstaff counsel shall consult established board guidelines for discipline and confer7 with the approval of the designated board-reviewer-, may 'consult established board guidelines for discipline and advise the respondent of the discipline the bar will recommend to the- referee if a written-plea of guilty is-entered. If staff counsel or the designated reviewer rejects the proposed consent judgment, the plea *475 shall not be filed with the referee. If staff counsel and the designated reviewer approve the proposed consent .judgment, the respondent shall be advised that staff counsel and the designated reviewer will recommend approval of the respondent’s written plea and the consent judgment shall be filed with the referee. If the referee accepts the consent .judgment, the referee shall enter a report and file same with the court as provided elsewhere in these rules. If the referee rejects the consent .judgment, the matter shall proceed as provided in this chapter.
(c) Approval of Consent Judgments. Acceptance of any proposed consent judgment more-severe than an admonishment shall be conditioned on final approval by the Supreme Court of Florida, and the court’s order will recite the disciplinary charges against the respondent.
(d) Content of Conditional Pleas. All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which the plea is made.
(e) Authority of Staff Counsel. Staff counsel has no authority to commit the boardbar on any consent judgment not previously approved by the boardas provided in this rule. All consent judgments tentatively-approved by staff counsel without-prior-approval of the board shall be subject to-board-approv-ab — In negotiating consent judgments with a respondent or in recommending acceptance, rejection, or offer of a tendered consent judgment, the grievance — committee, staff counsel and designated reviewer shall consider and express a recommendation on whether the consent judgment shall include revocation of certification if held by the attorney and restrictions to be placed on recertification in such areas. When certification revocation is agreed to in a consent judgment, the revocation and any conditions on recer-tification will be reported to the legal specialization and education director for recording purposes.
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Reinstatement; Applicability. An attorney who has been suspended or placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of membership fees.
(b) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 1 copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for elsewhere in this rule. The information required concerning the. petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition shall also include copies of all pleadings in the matter leading to placement on the inactive list and all such other matters as may be reasonably re *476 quired to demonstrate the character and fitness of the petitioner to resume the practice of law.
(c) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule.
(d) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.
(e) Bar Counsel. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint bar counsel to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(f) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules. The matter to decide shall be the fitness of the petitioner to resume the practice of law. In determining the fitness of the petitioner to resume the practice of law, the referee shall consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida Bar shall be relevant in proceedings under this rule.
(1) Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. The following shall be considered as disqualifying conduct:
(A) unlawful conduct;
(B) academic misconduct;
(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;
(D) misconduct in employment;
(E) acts involving dishonesty, fraud, deceit, or misrepresentation;
(F) abuse of legal process;
(G) financial irresponsibility;
(H) neglect of professional obligations;
(I) violation of an order of a court;
(J) evidence of mental or emotional instability;
(K) evidence of drug or alcohol dependency;
(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(M) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction; and
(N) any other conduct that reflects adversely upon the character or fitness of the applicant.
(2) Determination of Character and Fitness. In addition to other factors in making this determination, the following *477 factors should be considered in assigning weight and significance to prior conduct:
(A) age at the time of the conduct;
(B) recency of the conduct;
(C) reliability of the information concerning the conduct;
(D) seriousness of the conduct;
(E) factors underlying the conduct;
(F) cumulative effect of the conduct or information;
(G) evidence of rehabilitation;
(H) positive social contributions since the conduct;
(I) candor in the discipline and reinstatement processes; and
(J) materiality of any omissions or misrepresentations.
(3) Elements of Rehabilitation. Any petitioner for reinstatement from discipline for prior misconduct shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(A) strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
(B) unimpeachable character and moral standing in the community;
(C) good reputation for professional ability, where applicable;
(D) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;
(E) personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(F) restitution of funds or property, where applicable;
(G) positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.
Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one’s community is an essential obligation of members of the bar.
(g) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(4) Summary Procedure. If after the completion of discovery bar counsel is unable to discover any evidence on *478 which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.
(h) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on bar counsel and a copy of the report only on all other parties. Bar counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(i) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(j) Recommendation of Referee and Judgment of the Court. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the referee shall enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct that led to the petitioner’s suspension of membership in The Florida Bar or conduct that led to the petitioner’s incapacity; and further provided, however, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.
(k) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person. In cases of incapacity no petition for reinstatement shall be filed within 6 months following an adverse judgment under this rule.
(l) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to members placed on the inactive list for incapacity not related to misconduct and suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and an original and 1 copy filed therewith. A copy shall be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authoriz *479 ing the furnishing of certified copies of the petitioner’s tax returns for the past 5 year’s or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the conduct, offense, or misconduct upon which the suspension or incapacity was based, together with the date of such suspension or incapacity;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner’s occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
*480 (L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the bar counsel to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(m) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I) an administrative fee in the amount of $7501250 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent an abuse of discretion the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. The costs incurred by the bar in any reinstatement case may be assessed against the petitioner unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner’s Costs. The referee may assess the petitioner’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
*481 (n) Readmission; Applicability. A
former member who has been disbarred or whose petition for disciplinary resignation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. No application for readmission following disbarment or disciplinary resignation may be tendered until such time as all restitution and disciplinary costs as may have been ordered or assessed have been paid together with any interest accrued.
(1) Readmission After Disbarment. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the court might determine in the disbarment order. An order of disbarment that states the disbarment is permanent shall preclude readmission to The Florida Bar.
(2) Readmission After Disciplinary Resignation. In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney’s petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission.
RULE 3-7.11 GENERAL RULES OF PROCEDURE
(a)Time is Directory. Except as provided herein, the time intervals required are directory only and are not jurisdictional. Failure to observe such directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party except where so provided.
(b) Process. Every member of The Florida Bar is charged with notifying The Florida Bar of a change of mailing address or military status. Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this court shall direct otherwise. Every attorney of another state who is permitted to practice for the purpose of a specific case before a court of record of this state may be served by registered or certified mail addressed to said attorney in care of the Florida attorney who was associated or appeared with the attorney in the specific case for which the out-of-state attorney was permitted to practice or addressed to said attorney at any address listed by the attorney in the pleadings in such case.
Provided, however, when a person is represented by counsel service of process and notices shall be directed to counsel.
(c) Notice in Lieu of Process. Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or *482 such later address as may be known to the person effecting the service.
When the respondent is represented by counsel in the matter, due process is satisfied by the service of the complaint upon the respondent’s counsel by mailing a copy thereof by registered or certified mail return receipt requested to the last known address of the respondent’s counsel according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
(d) Subpoenas. Subpoenas for the attendance of witnesses and the production of documentary evidence other than before a circuit court shall be issued as follows:
(1) Referees. Subpoenas for the attendance of witnesses and production of documentary evidence before a referee shall be issued by the referee and shall be served in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.
(2) Grievance Committees. Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued by the chair or vice-chair of a grievance committee in pursuance of an investigation authorized by the committee. Such subpoenas may be served by any member of such committee, by an investigator employed by The Florida Bar, or in the manner provided by law for the service of process.
(3) Bar Counsel Investigations. Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting an initial investigation shall be issued by the chair or vice chair of a grievance committee to which the matter will be assigned, if appropriate. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(4) After Grievance Committee Action, But Before Appointment of Referee. Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting further investigation after action by a grievance committee, but before appointment of a referee, shall be issued by the chair or vice chair of the grievance committee to which the matter was assigned. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(5) Board of Governors. Subpoenas for the attendance of witnesses and the production of documentary evidence before the board of governors shall be issued by the executive director and shall be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(6) Confidential Proceedings. If the proceeding is confidential, a subpoena shall not name the respondent but shall style the proceeding as “Confidential Proceeding by The Florida Bar under the Rules of Discipline.”
(7) Contempt. Any persons who without adequate excuse fail to obey such a subpoena served upon them may be cited for contempt of this court in the manner provided by this rule.
(8) Assistance to Other Lawyer Disciplinary Jurisdictions. Upon receipt of a subpoena certified to be duly issued under the rules or laws of another lawyer disciplinary jurisdiction, the executive director may issue a subpoena directing a person domiciled or found within the state of Florida to give testimony and/or produce documents or oth *483 er things for use in the other lawyer disciplinary proceedings as directed in the subpoena of the other jurisdiction. The practice and procedure applicable to subpoenas issued under this subdivision shall be that of the other jurisdiction, except that:
(A) the testimony or production shall be only in the county wherein the person resides or is employed, or as otherwise fixed by the executive director for good cause shown; and
(B) compliance with any subpoena issued pursuant to this subdivision and contempt for failure in this respect shall be sought as elsewhere provided in these rules.
(e) Oath of Witness. Every witness in every proceeding under these rules shall be sworn to tell the truth. Violation of this oath shall be an act of contempt of this court.
(f) Contempt. If an agency other than a circuit court shall find that a person is in contempt under these rules, such person shall be cited for contempt in the following manner, except that a respondent in a disciplinary proceeding may be cited for contempt by petition for an order to show eaasecontempt filed and heard in the Supreme Court of Florida or in-the cireuit court:
(1) Petition for Order to Show Cau-seContempt. The agency shall direct bar counsel, or chair of the agency if there is no bar counsel, serving in the matter in which the contempt occurs, to present to the circuit court having jurisdiction, a petition for the issuance of-an order to show cause why the person-so accused should not be held to hold the person in contempt of this court.
(2) Appellate Review. A judgment in such contempt proceedings may be appealed by either party in the manner provided in the rule on appellate review of disciplinary proceedings under these rules, except that a copy of the petition for review shall not be filed with the clerk of the circuit court, and the record shall be forwarded to the Supreme Court of Florida by the judge or the agency possessing the same.
(g) Testimony of Witnesses; Contempt. Unless the respondent claims a privilege or right properly available under applicable law, the respondent or any other person who is subpoenaed to appear and give testimony or produce books, papers, or documents and who refuses to appear or produce such books, papers, or documents or who, having been duly sworn to testify, refuses to answer any proper question may be cited for contempt of this court.
(h) Court Reporters. Court reporters who are employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent attorney objects at least 48 hours in advance of the matter to be recorded, an independent contract reporter may be retained. Reasonable costs for court reporter service may be taxed to a respondent for payment to The Florida Bar.
(i) Disqualification as Trier and Attorney for Respondent Due to Conflict.
(1) EmployeesGrievance Committee Members, and-Members of the Board of Governors, and Employees of The Florida Bar. No employee of The Florida Bargrievance committee member, and no member of the board of governors, or employee of The Florida Bar shall represent a party other than The Florida Bar in any-of the following spe-eifie — matters^disciplinary proceedings authorized under these rules.
(A) certification-appeals;
*484 (B) appeals' to or feom-the committee on professional ethics; and
(C) cases being investigated on-litigated involving' the -unl-icensed-prac-tiee-of law»
(2) Former Grievance Committee Members, Former Board Members, or and Former Employees. No former member of a grievance committee, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in such-mattersdiscipli-nary proceedings authorized under these rules if personally involved to any degree in the matter while a member of the grievance committee, the board of governors, or while an employee of The Florida Bar.
A former member of the board ' of governors, former member of any grievance committee, or former employee of The Florida Bar who did not participate personally in any way in the investigation or prosecution of the matter or in any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such investigation or prosecution, shall not represent any party except The Florida Bar for 1 year after such service without the express consent of the board.
(3) AttorneysPartners, Associates, Employers, or Employees of the Firms of Grievance Committee Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. An attorney-Members of the firms of grievance committee members or board members shall not represent any party other than The Florida Bar in disciplinary proceedings provideeh-for in authorized under these disciplinary rules under any of-the following circumstances: without the express consent of the board.
(A) If the attorney is a member or ■former member of the board of governors, member or-former-member-of any grievance committee, or employee or former employee — of The Florida -Bar and while in such-capae-ify partiei-pated personally in — any - way -in.the investigation or prosecution of-.the matter or any related-matter in-which the attorney seeks to4>e-a- representative or if the attorney served — in a supervisory capacity over such investigation or prosecution.
(B) A partner, associate-,-employer,- or employee of an attorney prohibited from representation by -subdivision (3)(A) — shall likewise be prohibited feom-representing any such party.
(C) A member-of — the-board—shall notr-represent any party except The Florida Bar while serving as a member of the board of-governors or for one year thereafter.
(D) An employee -of The ■ Florida -Bar shall not represent any party ex-eept The-Florida Bar while an- employee of-The Florida Bar-and-shall not thereafter represent such party for a period of 1 year- without the express consent of-the-board.
(E) A member-of a^-grievance-committee shall-not represent-a-ny-party exeept Th-e-Florida Bar while a-member of a grievance committee and shall not thereafter represent such -party for-a period of 1 year without — the express consent of the-board.
(-F) A partner,-associate-, ■ employer, or employee of an attorney-prohibited from representation - by subdivisions (3-XC), (3X-D-), and (3)(E) of■■ this-rule shall not represent any-party except The-Florida-Bar without the express consent of the- board-.of governors.
*485 (4) Partners, Associates, Employers, or Employees of the Firms of Former Grievance Committee Members or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Attorneys in the firms of former board members or former grievance committee members shall not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules for 1 year after the former member’s service without the express consent of the board.
3-8 FLORIDA BAR-GRIEVANCE MEDIATION PROGRAM
RULE 3-8.1 FLORIDA BAR GRIEVANCE MEDIATION PROGRAM
(a) Establishment. — The—Florida Bar Grievance Mediation Program'(hereinafter -mediation program”) is — hereby established as a-means to empower complainants and respondents to-resolve disputes without the involvement of--formal disciplinary processes.
(b) Authority of Board of Governors? The board of governors may appoint a standing committee to administer the mediation program and may adopt policies-for implementation of the mediation progr-ann
(c) Certified Mediation Program Mediators.
(1) Certification. Persons wishing to become mediation program mediators (hereinafter “program mediators”) shall apply to the- committee for its review and certification. — The committee shall promulgate standards and forms for certification hereunder. — Membership in The FloridaUBar shall not be required for certification as a program mediator.
(2) CLE Credit for Service. — Program -mediators shall be-eligible for up to 2 hours of annual CLE-eredit in the area of ethics for service-⅛ the mediation program as provided in the policies adopted-under this-rule-
(d) Criteria for Mediation» — No disciplinary file may be referred to the mediation program--unless the-public interest-is satisfied by the resolution-of-the private rights-of-the parties to the mediation. — If any issue involved in a disciplinary file must remainder resolution within the disciplinary process, such — file shall not be referred for mediation.
The board-may adopt-pol-ieies to-assist those making-referrals — under this rule.
(e) Effect of Referral. — Upon referral for mediation-of the issues involved in a disciplinary file, the disciplinary file shall be closed without the-entry of a sanction and shall remain closed unless:
(1) the respondent fails-to attend-mediation;
(2) the mediation fails to resolve-the issues involved; or-
(3) the respondent fails-to fully -comply with the terms of a-written mediation agreement.
(f) Effect of Respondent’s Failure to Attend or Comply. — It shall-be a violation of the Rules Regulating The Florida Bar for a respondent to fail- to attend an agreed-upon mediation conference without good-cause. — Likewise, -it-sfaall be a violation-of-the Rules Regulating The Florida Bar for-a- respondent tofaihto fully comply with the terms of a written mediation agreement.
(g) Effect of Complainant’s Failure to Attend, If a file referred for mediation is not-fully resolved by reason of a- cofn-plainant’s failure to attendT without good- *486 cause, the disciplinary — file-based thereon may remain closed,■
(h) Procedures,
(1) Authoidty^for-Referral fo-Media-
(A) Bar — Counsel,—Ras—counsel, with the eonsent-of -the parties-may refer any file to the mediation program that meets — the criteria established by any policies adopted under the authority- of this rule.
(E) Grievance-Committees, Grievance — committees, with.concur-ronco of bar counsel and consent of the partiesr-may-refer any file-to the mediation-program that meets the criteria — established-—fey—any—policies adopted under-the authority of this rule*
(C) Board — of—Governors,—The board of governors, upon review of a file referred to it, as authorized- elsewhere under the Rules- Regu-lating The Florida — Bar-, may refer same to the mediation-program if it meets the criteria established by any policies adopted under the authority-of this
(D) Referees, - Referees, with concurrence of The Florida Bar — may refer any file to the mediation-program that meets the criteria established by any policies adopted under the authority of this- rule. — Concurrence of The ■Florida Bar requires agreement of bar counsel and the member — of- the board of governors designated to review the disciplinary matter-at-issue.
(E) Supreme — Court—of -Florida, The Supreme Court of Florida may order referra-hof-any file to the-mediation program-that meets the criteria established-.by - any policies adopted under the authority-of this rule.
(g-)-Bisqualification — of—Mediator, No — person shall serve as a program mediator in any matter referred hereunder if such person w&u-ld-be disqualified from-servi-ng as a mediator under the criteriar-provided in -the Florida Rules for Certified and Coart-Appointed Mediators, and, in the — case- of program-mediators who are also-members-of-The Florida Bar, the Rules- Regulatin-g-The Florida-Bar.
(3) Report to The Florida Bar, At the conclusion of a mediation the program mediator shall -report to the committee-limited to:
(A) reference — te—the—matter—by identification of the-disciplinary file to which it pertains;
(-B-)-reference to whether the matter settled without -resort to a formal mediation conference^
(C) whether — a—formal—mediation conference was held and, if so, when;
(D) the parties who attended and these-who did not;
(E) whether the mediation resulted in complete settlement, partial settlement, or impasse; and
(F) in instances -where disciplinary violations of a sort not proper for mediation are divulged or discovered, or a party to the mediation-appears to the program mediator to be incompetent to participate in the mediation, a statement that the matter is no longer proper for mediation,- without elaboration as to why.
(i) Florida Rules for Certified and Court-Appointed Mediators, — The Florida Rules for Certified and-Court-Appointed Mediators shall apply to proceedings under ■ this rule unless-otherwise stated herein-or- in conflict with the-provisions of this rule or the Rules of Professional Conduct.-
*487 (j) Immunity. — The members — of the committee and program mediators, as well as staff of The-Fiorida Bar assisting the committee — or program mediators shall have immunity -fr-om civil-liability-for all acts within the course of their official dutiesr
RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees and Costs. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee or cost is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee or cost is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.
(b) Factors to Be Considered in Determining Reasonable Fee and Costs.
(1) Factors to be considered as guides in determining a reasonable fee include:
(4-A) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(SC) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6F) the nature and length of the professional relationship with the client;
(?G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation.
(2) Factors to be considered as guides in determining reasonable costs include:
(A) the nature and extent of the disclosure made to the client about the costs;
(B) whether a specific agreement exists between the lawyer and client as to the costs a client is expected to pay and how a cost is calculated that is charged to a client;
(C) the actual amount charged by third party provider of services to the attorney;
*488 (D) whether specific costs can be identified and allocated to an individual client or a reasonable basis exists to estimate the costs charged;
(E) the reasonable charges for providing in-house service to a client if the cost is an in-house charge for services;
All costs are subject to the test of reasonableness set forth in subdivision (a) above. When the parties have a written contract in which the method is established for charging costs, the costs charged thereunder shall be presumed reasonable.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
(d) Enforceability of Fee Contracts.
Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee or Costs to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee and costs shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the *489 signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) “The undersigned client has, before signing this contract, received and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
(ii) “This contract may be can-celled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client.”
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
1. 33 1/3% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
1. 40% of any recovery up to $1 million; plus
*490 2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33 1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. A petition under this subdivision shall contain a certificate showing service on the client and, if the petition is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
*491 (iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint, or within 10 days of execution of a contract for division of fees when new counsel is engaged. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and, if the application is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(6) In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney’s fee in a structured verdict or settlement when such separate negotiations would place the attorney in a position of conflict.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
*492 (A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered -or-cash-aetually--paid-on-be-half-of-the client. — A lawyer or law firm may accept payment under a credit plan. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract.. If you do not reach an agreement with esel lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another layyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to *493 consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney’s fees, costs, and expenses to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you — need not pay any ■money to anyone, including your lawyer cannot pay any money to anyone, including you, without an appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating *494 The Florida Bar) be included in your fee contract.
Client Signature
Date
Attorney Signature
Date
Comment
Basis or rate of fee and costs
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
General overhead should be accounted for in a lawyer’s fee, whether the lawyer charges hourly, flat, or contingent fees. Filing fees, transcription, and the like should be charged to the client at the actual amount paid by the lawyer. A lawyer may agree with the client to charge a reasonable amount for in-house costs or services. In-house costs include items such as copying, faxing, long distance telephone, and computerized research. In-house services include paralegal services, investigative services, accounting services, and courier services. The lawyer should sufficiently communicate with the client regarding the costs charged to the client so that the client understands the amount of costs being charged or the method for calculation of those costs.
Rule 4 — 1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4 — 1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more *495 extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. ■ Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4 — 1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.
Contingent fee regulation
Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent, portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees.- Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth'in rule 4-1.5(f)(4)(B).
The limitations in rule 4-1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4-1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
*496 The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4 — 1.5(f)(6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating the Florida Bar can be effective tools for structuring fees. For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property retained or recovered in a general civil action is not prohibited by these rules. However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate). Courts have held that unilateral bonus fees are unenforceable. The test of reasonableness and other requirements of this rule apply to permissible bonus fees.
Division of fee
A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
Disputes over fees
Since the fee arbitration rule (Chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4 — 1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; *497 (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4 — 1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rale 4 — 1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4-1.5(f)(4) and usually occurs prior to the commencement of litigation or at the onset of the representation. However, in those cases in which .litigation has been commenced or the representation has already begun, approval of the fee division should be sought within a reasonable period of time after the need for court approval of the fee division arises.
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel’s fee is established. However, the effect should not be to impose an unreasonable fee on the client.
Credit Plans
Credit plans include credit cards. If a lawyer accepts payment from a credit plan for an advance of fees and costs, the amount must be held in trust in accordance with chapter 5, Rules Regulating The Florida Bar, and the lawyer must add the lawyer’s own money to the trust account in an amount equal to the amount charged by the credit plan for doing business with the credit plan.
RULE 4-1.8 CONFLICT OF INTEREST; PROHIBITED AND OTHER TRANSACTIONS
(a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly ac *498 quire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer’s fee or expenses, unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.
(b) Using Information to Disadvantage of Client. A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by rule 4-1.6.
(c) Gifts to Lawyer or Lawyer’s Family. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Acquiring Literary or Media Rights. Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) Financial Assistance to Client. A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1)a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2)a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
(f) Compensation by Third Party. A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client consents after consultation;
(2) there is no interference with the lawyer’s independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by rule 4-1.6.
(g) Settlement of Claims for Multiple - Clients. A lawyer who represents 2 or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) Limiting Liability for Malpractice. A lawyer shall not make an agreement prospectively limiting the lawyer’s liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.
(i) Acquiring Proprietary Interest in Cause of Action. A lawyer shall not acquire a proprietary interest in the cause of *499 action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) acquire a lien granted by law to secure the lawyer’s fee or expenses; and
(2) contract with a client for a reasonable contingent fee.
(j) Representation of Insureds. When a lawyer undertakes the defense of an insured other than a governmental entity, at the expense of an insurance company, in regard to an action or claim for personal injury or for property damages, or for death or loss of services resulting from personal injuries based upon tortious conduct, including product liability claims, the Statement of Insured Client’s Rights shall be provided to the insured at the commencement of the representation. The lawyer shall sign the statement certifying the date on which the statement was provided to the insured. The lawyer shall keep a copy of the signed statement in the client’s file and shall retain a copy of the signed statement for 6 years after the representation is completed. The statement shall be available for inspection at reasonable times by the insured, or by the appropriate disciplinary agency. Nothing in the Statement of Insured Client’s Rights shall be deemed to augment or detract from any substantive or ethical duty of a lawyer or affect the extradiscipli-nary consequences of violating an existing substantive legal or ethical duty; nor shall any matter set forth in the Statement of Insured Client’s Rights give rise to an independent cause of action or create any presumption that an existing legal or ethical duty has been breached.
STATEMENT OF INSURED CLIENT’S RIGHTS
An insurance company has selected a lawyer to defend a lawsuit or claim against you. This Statement of Insured Client’s Rights is being given to you to assure that you are aware of your rights regarding your legal representation. This disclosure statement highlights many, but not all, of your rights when your legal representation is being provided by the insurance company.
1. Your Lawyer. If you have questions concerning the selection of the lawyer by the insurance company, you should discuss the matter with the insurance company and the lawyer. As a client, you have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours and give you this information in writing, if you request it. Your lawyer is responsible for keeping you reasonably informed regarding the case and promptly complying with your reasonable requests for information. You are entitled to be informed of the final disposition of your case within a reasonable time.
2. Fees and Costs. Usually the insurance company pays all of the fees and costs of defending the claim. If you are responsible for directly paying the lawyer for any fees or costs, your lawyer must promptly inform you of that.
3. Directing the Lawyer. If your policy, like most insurance policies, provides for the insurance company to control the defense of the lawsuit, the lawyer will be taking instructions from the insurance company. Under such policies, the lawyer cannot act solely on your instructions, and at the same time, cannot act contrary to your interests. Your preferences should be communicated to the lawyer.
4. Litigation Guidelines. Many insurance companies establish guidelines governing how lawyers are to proceed in defending a claim. Sometimes those guide *500 lines affect the range of actions the lawyer can take and may require authorization of the insurance company before certain actions are undertaken. You are entitled to know the guidelines affecting the extent and level of legal services being provided to you. Upon request, the lawyer or the insurance company should either explain the guidelines to you or provide you with a copy. If the lawyer is denied authorization to provide a service or undertake an action the lawyer believes necessary to your defense, you are entitled to be informed that the insurance company has declined authorization for the service or action.
5. Confidentiality. Lawyers have a general duty to keep secret the confidential information a client provides, subject to limited exceptions. However, the lawyer chosen to represent you also may have a duty to share with the insurance company information relating to the defense or settlement of the claim. If the lawyer learns of information indicating that the insurance company is not obligated under the policy to cover the claim or provide a defense, the lawyer’s duty is to maintain that information in confidence. If the lawyer cannot do so, the lawyer may be required to withdraw from the representation without disclosing to the insurance company the nature of the conflict of interest which has arisen. Whenever a waiver of the lawyer-client confidentiality privilege is needed, your lawyer has a duty to consult with you and obtain your informed consent. Some insurance companies retain auditing companies to review the billings and files of the lawyers they hire to represent policyholders. If the lawyer believes a bill review or other action releases information in a manner that is contrary to your interests, the lawyer should advise you regarding the matter.
6. Conflicts of Interest. Most insurance policies state that the insurance company will provide a lawyer to represent your interests as well as those of the insurance company. The lawyer is responsible for identifying conflicts of interest and advising you of them. If at any time you believe the lawyer provided by the insurance company cannot fairly represent you because of conflicts of interest between you and the company (such as whether there is insurance coverage for the claim against you), you should discuss this with the lawyer and explain why you believe there is a conflict. If an actual conflict of interest arises that cannot be resolved, the insurance company may be required to provide you with another lawyer.
7. Settlement. Many policies state that the insurance company alone may make a final decision regarding settlement of a claim, but under some policies your agreement is required. If you want to object to or encourage a settlement within policy limits, you should discuss your concerns with your lawyer to learn your rights and possible consequences. No settlement of the case requiring you to pay money in excess of your policy limits can be reached without your agreement, following full disclosure.
8. Your Risk. If you lose the case, there might be a judgment entered against you for more than the amount of your insurance, and you might have to pay it. Your lawyer has a duty to advise you about this risk and other reasonably foreseeable adverse results.
9. Hiring Your Own Lawyer. The lawyer provided by the insurance company is representing you only to defend the lawsuit. If you desire to pursue a claim against the other side, or desire legal services not directly related to the defense of the lawsuit against you, you will need to make your own arrangements with this or *501 another lawyer. You also may hire another lawyer, at your own expense, to monitor the defense being provided by the insurance company. If there is a reasonable risk that the claim made against you exceeds the amount of coverage under your policy, you should consider consulting another lawyer.
10. Reporting Violations. If at any time you believe that your lawyer has acted in violation of your rights, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar call (850) 561-5839 or you may access the Bar at www.FlaBar.org.
IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS, PLEASE ASK FOR AN EXPLANATION.
CERTIFICATE
The undersigned hereby certifies that this Statement of Insured Client’s Rights has been provided to.(name of insured/client(s)). by .(mail/hand delivery). at .(address of insured/client(s) to which mailed or delivered, on.(date).
[Signature of Attorney]
[Print/Type Name]
Florida Bar No.:.—
Comment
Transactions between client and lawyer
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client’s disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client’s consent, seek to acquire nearby property where doing so would adversely affect the client’s plan for investment. Subdivision (a) does not, however, apply to standard commercial transactions between the lawyer and the client for, products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in subdivision (a) are unnecéssary and impracticable. Likewise, subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer’s fee or expenses.
A lawyer may accept a gift from a client, if the transaction meets general standards of fairness and if the lawyer does not prepare the instrument bestowing the gift. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If effectuation of a substantial gift requires preparing a legal instrument such as a will or. conveyance, however, the client should have the detached advice that another lawyer can provide and the lawyer should advise the client to seek advice of independent counsel. Subdivision (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.
Literary rights
An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of *502 the client may detract from the publication value of an account of the representation. Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer’s fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and subdivision (i).
Person paying for lawyer’s services
Rule 4 — 1.8(f) requires disclosure of the fact that the lawyer’s services are being paid for by a third party. Such an arrangement must also conform to the requirements of rule 4-1.6 concerning confidentiality and rule 4-1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.
Acquisition of interest in litigation
Subdivision (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these rules, such as the exception for reasonable contingent fees set forth in rule 4-1.5 and the exception for certain advances of the costs of litigation set forth in subdivision (e).
This rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
Representation of insureds
As with any representation of a client when another person or client is paying for the representation, the representation of an insured client at the request of the insurer creates a special need for the lawyer to be cognizant of the potential for ethical risks. The nature of the relationship between a lawyer and a client can lead to the insured or the insurer having expectations inconsistent with the duty of the lawyer to maintain confidences, avoid conflicts of interest, and otherwise comply with professional standards. When a lawyer undertakes the representation of an insured client at the expense of the insurer, the lawyer should ascertain whether the lawyer will be representing both the insured and the insurer, or only the insured. Communication with both the insured and the insurer promotes their mutual understanding of the role of the lawyer in the particular representation. The Statement of Insured Client’s Rights has been developed to facilitate the lawyer’s performance of ethical responsibilities. The highly variable nature of insurance and the responsiveness of the insurance industry in developing new types of coverages for risks arising in the dynamic American economy render it impractical to establish a statement of rights applicable to all forms of insurance. The Statement of Insured Client’s Rights is intended to apply to personal injury and property damage tort cases. It is not intended to apply to workers’ compensation cases. Even in that relatively narrow area of insurance coverage, there is variability among policies. For that reason, the statement is necessarily broad. It is the responsibility of the lawyer to explain the statement to the insured. In particular cases, the lawyer may need to provide additional information to the insured.
Because the purpose of the statement is to assist laypersons in understanding their basic rights as clients, it is necessarily abbreviated. Although brevity promotes the purpose for which the statement was developed, it also necessitates incompleteness. For these reasons, it is specifically provided that the statement shall not serve *503 to establish any legal rights or duties, nor create any presumption that an existing legal or ethical duty has been breached. As a result, the statement and its contents should not be invoked by opposing parties as grounds for disqualification of a lawyer or for procedural purposes. The purpose of the statement would be subverted if it could be used in such a manner.
The statement is to be signed by the lawyer to establish that it was timely provided to the insured, but the insured client is not required to sign it. It is in the best interests of the lawyer to have the insured client sign the statement to avoid future questions, but it is considered impractical to require the lawyer to obtain the insured client’s signature in all instances.
Establishment of the statement and the duty to provide it to an insured in tort cases involving personal injury or property damage should not be construed as lessening the duty of the lawyer to inform clients of their rights in other circumstances. When other types of insurance are involved, when there are other third-party payors of fees, or when multiple clients are represented, similar needs for fully informing clients exist, as recognized in rules 4-1.7(c) and 4 — 1.8(f).
RULE 4-1.16 DECLINING OR TERMINATING REPRESENTATION
(a)When Lawyer Must Decline or Terminate Representation. Except as stated in subdivision (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Rules of Professional Conduct or law;
(2) the lawyer’s physical or mental condition materially impairs the lawyer’s ability to represent the client; or
(3)the lawyer is discharged.
(b) When Withdrawal Is Allowed. Except as stated in subdivision (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
(1) the client persists in a course of action involving the lawyer’s services that the lawyer reasonably believes is criminal or fraudulent;
(2) the client has used the lawyer’s services to perpetrate a crime or fraud;
(3) athe client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;
(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer’s services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(6) other good cause for withdrawal exists.
(c) Compliance With Order of Tribunal. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Protection of Client’s Interest.
Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client’s interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers and other property relating *504 to or belonging to the client to the extent permitted by law.
Comment
A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest, and to completion.
Mandatory withdrawal
A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.
When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also rule 4-6.2. Difficulty may be encountered if withdrawal is based on the client’s demand that the lawyer engage in unprofessional conduct. The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer’s statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Discharge
A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer’s services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to be self-represented.
If the client is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client’s interests. The lawyer should make special effort to help the client consider the consequences and, in an extreme case, may initiate proceedings for a conservator-ship or similar protection of the client. See rule 4-1.14.
Optional withdrawal
A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client’s interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted if the lawyer’s services were misused in the past even if that would materially prejudice the client. The lawyer also may withdraw where the client insists on a repugnant or imprudent objective.
A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.
Assisting the client upon withdrawal
Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers and other property as *505 security for a fee only to the extent permitted by law.
Whether a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization’s highest authority is beyond the scope of these rules.
Refunding advance payment of unearned fee
Upon termination of representation, a lawyer should refund to the client any advance payment of a fee that has not been earned. This does not preclude a lawyer from retaining any reasonable nonrefundable fee that the client agreed would be deemed earned when the lawyer commenced the client’s representation. See also rule 4-1.5.
RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL
(a)False Evidence; Duty to Disclose. A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;
(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) permit any witness, including a criminal defendant, to offer testimony or other evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial - measures.
(b) Extent of Lawyer’s Duties. The duties stated in subdivision (a) continue beyond the conclusion of the proceeding and apply even if compliance requires disclosure of information otherwise protected by rule 4-1.6.
(c) Evidence Believed to Be False. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(d) Ex Parte Proceedings. In an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.
Comment
The advocate’s task is to present the client’s case with .persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate’s duty of candor to the tribunal. However, an advocate does not vouch, for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.
Representations by a lawyer
An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client’s behalf, and not assertions by the lawyer. Compare rule 4-3.1. However, an assertion purporting to be on the lawyer’s own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirma *506 tive misrepresentation. The obligation prescribed in rule 4-1.2(d) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with rule 4-1.2(d), see the comment to that rule. See also the comment to rule 4-8.4(b).
Misleading legal argument
Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in subdivision (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case. False evidence
When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client’s wishes.
When false evidence is offered by the client, however, a conflict may arise between the lawyer’s duty to keep the client’s revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures.
Except in the defense of a criminally accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client’s deception to the court or to the other party. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process that the adversary system is designed to implement. See rule 4-1.2(d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer’s advice to reveal the false evidence and insist that the lawyer keep silent. Thus, the client could in effect coerce the lawyer into being a party to fraud on the court.
Perjury by a criminal defendant
Whether an advocate for a criminally accused , has the same duty of disclosure has been intensely debated. WTiile it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer’s duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible if trial is imminent, if the confrontation with the client does not take place until the trial itself, or if no other counsel is available.
The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer’s effort to rectify the situation can increase the likelihood of the client’s being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.
*507 Although the offering of perjured testimony or false evidence is considered a fraud on the tribunal, these situations are distinguishable from that of a client who, upon being arrested, provides false identification to a law enforcement officer. The client’s past act of lying to a law enforcement officer does not constitute a fraud on the tribunal, and thus does not trigger the disclosure obligation under this rule, because a false statement to an arresting officer is unsworn and occurs prior to the institution of a court proceeding. If the client testifies, the lawyer must attempt to have the client respond to any questions truthfully or by asserting an applicable privilege. Any false statements by the client in the course of the court proceeding will trigger the duties under this rule.
Remedial measures
If perjured testimony or false evidence has been offered, the advocate’s proper course ordinarily is to remonstrate with the client confidentially. If that fails, the advocate should seek to withdraw if that will remedy the situation. Subject to the caveat expressed in the next section of this comment, if withdrawal will not remedy the situation or is impossible and the advocate determines that disclosure is the only measure that will avert a fraud on the court, the advocate should make disclosure to the court. It is for the court then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer’s version of their communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.
Constitutional requirements
The general rule — that an advocate must disclose the existence of perjury with respect to a material fact, even that of a client — applies to defense counsel in criminal cases, as well as in other instances. However, the definition of the lawyer’s ethical duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases.
Refusing to offer proof believed to be false
Generally speaking, a lawyer has authority to refuse to offer testimony or other proof that the lawyer believes is untrustworthy. Offering such proof may reflect adversely on the lawyer’s ability to discriminate in the quality of evidence and thus impair the lawyer’s effectiveness as an advocate. In criminal cases, however, a lawyer may, in some jurisdictions, be denied this authority by constitutional requirements governing the right to counsel.
A lawyer may not assist the client or any witness in offering false testimony or other false evidence, nor may the lawyer permit the client or any other witness to testify falsely in the narrative form unless ordered to do so by the tribunal. If a lawyer knows that the client intends to commit perjury, the lawyer’s first duty is to attempt to persuade the client to testify truthfully. If the client still insists on committing perjury, the lawyer must threaten to disclose the client’s intent to commit perjury to the judge. If the threat of disclosure does not successfully persuade the client to testify truthfully, the *508 lawyer must disclose the fact that the client intends to lie to the tribunal and, per 4-1.6, information sufficient to prevent the commission of the crime of perjury.
The lawyer’s duty not to assist witnesses, including the lawyer’s own client, in offering false evidence stems from the Rules of Professional Conduct, Florida statutes, and caselaw.
Rule 4-1.2(d) prohibits the lawyer from assisting a client in conduct that the lawyer knows or reasonably should know is criminal or fraudulent.
Rule 4-3.4(b) prohibits a lawyer from fabricating evidence or assisting a witness to testify falsely.
Rule 4-8.4(a) prohibits the lawyer from violating the Rules of Professional Conduct or knowingly assisting another to do so.
Rule 4-8.4(b) prohibits a lawyer from committing a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer.
Rule 4-8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
Rule 4-8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.
Rule 4-1.6(b) requires a lawyer to reveal information to the extent the lawyer reasonably believes necessary to prevent a client from committing a crime.
This rule, 4-3.3(a)(2), requires a lawyer to reveal a material fact to the tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, and 4-3.3(a)(4) prohibits a lawyer from offering false evidence and requires the lawyer to take reasonable remedial measures when false material evidence has been offered.
Rule 4-1.16 prohibits a lawyer from representing a client if the representation will result in a violation of the Rules of Professional Conduct or law and permits the lawyer to withdraw from representation if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent or repugnant or imprudent. Rule 4-1.16(c) recognizes that notwithstanding good cause for terminating representation of a client, a lawyer is obliged to continue representation if so ordered by a tribunal.
To permit or assist a client or other witness to testify falsely is prohibited by section 837.02, Florida Statutes (1991), which makes perjury in an official proceeding a felony, and by section 777.011, Florida Statutes (1991), which proscribes aiding, abetting, or counseling commission of a felony.
Florida caselaw prohibits lawyers from presenting false testimony or evidence. Kneale v. Williams, 158 Fla. 811, 30 So.2d 284 (1947), states that perpetration of a fraud is outside the scope of the professional duty of an attorney and no privilege attaches to communication between an attorney and a client with respect to transactions constituting the making of a false claim or the perpetration of a fraud. Dodd v. The Florida Bar, 118 So.2d 17 (Fla.1960), reminds us that “the courts are ... dependent on members of the bar to ... present the true facts of each cause ... to enable the judge or the jury to [decide the facts] to which the law may be applied. When an attorney . allows false testimony ... [the attorney] ... makes it impossible for the scales [of justice] to balance.” See The Fla. Bar v. Agar, 394 So.2d 405 (Fla.1981), and The Fla. Bar v. Simons, 391 So.2d 684 (Fla.1980).
The United States Supreme Court in Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), answered in *509 the negative the constitutional issue of whether it is ineffective assistance of counsel for an attorney to threaten disclosure of a client’s (a criminal defendant’s) intention to testify falsely.
Ex parte proceedings
Ordinarily, an advocate has the limited responsibility of presenting 1 side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary injunction, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.
RULE 4-4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
(a) In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. Notwithstanding the foregoing, an attorney may, without such prior consent, communicate with another’s client in order to meet the requirements of any court rule, statute or contract requiring notice or service of process directly on an adverse party, in which event the communication shall be strictly restricted to that required by the court rule, statute or contract, and a copy shall be provided to the adverse party’s attorney.
(b) An otherwise unrepresented person to whom limited representation is being provided or has been provided in accordance with Rule Regulating the Florida Bar 4-1.2 is considered to be unrepresented for purposes of this rule unless the opposing lawyer knows of, or has been provided with, a written notice of appearance under which, or a written notice of time period during which, the opposing lawyer is to communicate with the limited representation lawyer as to the subject matter within the limited scope of the representation.
Comment
This rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between 2 organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, párties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications-authorized by lawPermit-ted communications include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an organization, this rule prohibits communications by a lawyer for 1 party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is *510 represented in the matter by the agent’s or employee’s own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare rule 4 — 3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
RULE 4-7.2 COMMUNICATIONS CONCERNING A LAWYER’S SERVICES
The following shall apply to any communication conveying information about a lawyer’s or a law firm’s services:
(a) Required Information.
(1) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content. /
(2) Location of Practice. All advertisements and written communications provided for under these rules shall disclose, by city or town, 1 or more bona fide office locations of the lawyer or lawyers who will actually perform the services advertised. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made. For the purposes of this rule, a bona fide office is defined as a physical location maintained by the lawyer or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis. If an advertisement or written communication lists a telephone number in connection with a specified geographic area-other than an area containing a bona fide office, appropriate qualifying language must appear in the advertisement.
(b) Prohibited Statements and Information.
(1) Statements About Legal Services. A lawyer shall not make or permit to be made a false, misleading, deceptive, or unfair communication about the lawyer or the lawyer’s services. A communication violates this rule if it:
(A) contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;
(B) contains any reference to past successes or results obtained or is otherwise likely to create an unjustified expectation about results the lawyer can achieve except as allowed in the rule regulating information about a lawyer’s services provided upon request;
(C) states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;
(D) compares the lawyer’s services with other lawyers’ services, unless the comparison can be factually substantiated; or
(E) contains a testimonial.
(2) Misleading or Deceptive Factual Statements. Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under this rule shall not:
(A) be directly or impliedly false or misleading;
(B) be potentially false or misleading;
(C) fail to disclose material information necessary to prevent the infor *511 mation supplied from being actually or potentially false or misleading;
(D) be unsubstantiated in fact; or
(E) be unfair or deceptive.
(3) Descriptive Statements. A lawyer shall not make statements describing or characterizing the quality of the lawyer’s services in advertisements and written communications; provided that this provision shall not apply to information furnished to a prospective client at that person’s request or to information supplied to existing clients.
(4) Prohibited Visual arid Verbal Portrayals. Visual or verbal descriptions, depictions, or portrayals of persons, things, or events must be objectively relevant to the — selection of an attorney and shall not be deceptive, misleading, or manipulative.
(5) Advertising Areas of Practice. A lawyer or law firm shall not advertise for legal employment in an area of practice in which the advertising lawyer or law firm does not currently practice law.
(6) Stating or Implying Florida Bar Approval. A lawyer or law firm-shall not make any statement that directly or impliedly indicates that the communication has received any kind of approval from The Florida Bar.
(c) General Regulations Governing Content of Advertisements.
(1) Use of Illustrations. All — illlus-trations used in advertisements shall present information that is-directly related and objectively relevant to a viewer’s possible need for-legal-services -in-a specific type of .matter. — Such illustrations shall be still pictures or drawings and shall contain no features that are likely to deceive, mislead, or confuse the viewer.
(2) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of subdivision (c)(3) of this rule.
(3) Communication of Fields of Practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is — “certified,” “board certified,” or a “specialist” except that a as follows:
(A) Florida Bar Certified Lawyers. A lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified-by- an organization whose specialty certification program has been-accredited by the American Bar Association-may inform the public and other lawyers of the lawyer’s certified areas of legal practice, and — Such communications should identify The Florida Bar as the certifying organization and may state in communications to the public that the lawyer is “certified,” “board certified,” or a “specialist in (area of certification).”
(B) Lawyers Certified by Organizations Other Than The Florida Bar or Another State Bar. A lawyer certified by an organization other than The Florida Bar or another state bar may inform the public and other lawyers of the lawyer’s certified areas(s) of legal practice by stating that the lawyer is “certified,” “board certified,” or a “specialist in (area of certification)” if:
(i) the organization’s program has been accredited by The Florida Bar as provided elsewhere in these Rules Regulating The Florida Bar; and,
*512 (ii) the member includes the full name of the organization in all communications pertaining to such certification.
(C) Certification by Other State Bars. A lawyer certified by another state bar may inform the public and other lawyers of the lawyer’s certified area(s) of legal practice and may state in communications to the public that the lawyer is “certified,” “board certified,” or a “specialist in (area of certification)” if:
(i) the state bar program grants certification on the basis of standards reasonably comparable to the standards of the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, as determined by The Florida Bar; and,
(ii) the member includes the name of the state bar in all communications pertaining to such certification.
(4) Disclosure of Liability For Expenses Other Than'Fees. Every advertisement and written communication that contains information about the lawyer’s fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.
(5) Period for Which Advertised Fee Must be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than 1 year following publication.
(6) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.10.
(7) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm. Rulé 4 — 1.5(f)(4)(D) (regarding the division of contingency fees) is not affected by this provision even though the lawyer covered by rule 4-1.5(f)(4)(D)(ii) advertises.
(8) Referrals to Another Lawyer. If the case or matter will be referred to another lawyer or law firm, the communication shall include a statement so advising the prospective client.
(9) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer’s services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication per'mitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
(10) Language of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this subchapter must appear in each language used in the advertisement or direct mail communication.
(11) Appearance of Required Statements. Any words or statements required by this subchapter to appear in *513 an advertisement or direct mail communication must be clearly legible if written or intelligible if spoken aloud. If the words or statements appear in text, then the text also must be no smaller than one-quarter the size of the largest type otherwise appearing in the advertisement.
(⅛)(12) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of subdivision (b)(1) of this rule:
(A) subject to the requirements of this rule and rule 4-7.10, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, Web site addresses, and electronic mail addresses, office and telephone service hours, and a designation such as “attorney” or “law firm”;
(B) date of admission to The Florida Bar and any other bars, current membership or positions held in The Florida Bar, its sections or committees, former membership or positions held in The Florida Bar, its sections or committees, together with dates of membership, former positions of employment held in the legal profession, together with dates the positions were held, years of experience practicing law, number of lawyers in the advertising law firm, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(C) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(D) foreign language ability;
(E) fields of law in which the lawyer practices, including official certification logos, subject to the requirements of subdivisions (c)(2) and (c)(3) of this rule;
(F) prepaid or group legal service plans in which the lawyer participates;
(G) acceptance of credit cards;
(H) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (c)(4) and (c)(5) of this rule;
(I) a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event;
(J) common salutary language such as “best wishes,” “good luck,” “happy holidays,” or “pleased to announce”;
(K) an illustration of the scales of justice not deceptively similar to official certification logos or The Florida Bar logo, a gavel, or traditional renditions of Lady Justice, or a photograph of the head and shoulders of the lawyer or lawyers who are members of or employed by the firm against a plain background consisting of a single solid color or a plain unadorned set of law books; and
(L) a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service *514 approved by The Florida Bar, and the logo of its sponsoring bar association.
Comment
This rule governs all communications about a lawyer’s services, including advertising permitted by this subchapter. Whatever means are used to make known a lawyer’s services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with this rule, where a lawyer implies that any court, tribunal, or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm that states that all the firm’s lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although this rule permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that the lawyer is a member of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter 2 examples of misleading omissions also are examples of unfair advertising.
Prohibited information
The prohibition in subdivision (b)(1)(B) of statements that may create “unjustified expectations” precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer’s record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in subdivision (b)(1)(D) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that the lawyer or the lawyer’s law firm is “the best,” “one of the best,” or “one of the most experienced” in a field of law.
The prohibition in subdivision (b)(1)(E) precludes endorsements or testimonials, whether from clients or anyone else, because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future eases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
Subdivision (b)(4) prohibits visual or verbal descriptions, depictions, or portrayals in any advertisement which create suspense, or contain exaggerations or appeals to the emotions, call for legal services, or create consumer problems through characterization and dialogue ending with. the lawyer solving the problem. Illustrations permitted under Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), are informational and not misleading, and are therefore permissible. As an example, a drawing of a 'fist, to suggest the lawyer’s ability to achieve results, would be barred. Examples of permissible illustrations would include a graphic rendering of the scales of justice to indicate that the advertising attorney *515 practices law, a picture of the lawyer, or a map of the office location.
Communication of fields of practice
This rule permits a lawyer or law firm to indicate areas of practice in communications about the lawyer’s or law firm’s services, such as in a telephone directory or other advertising, provided the advertising lawyer or law firm actually practices in those areas of law at the time the advertisement is disseminated. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or an organization having substantially the same standar-dsaccredited by The Florida Bar may be described to the public as a “specialist” or as “specializing-/’J^certified/]_||board_certified/||_or_ai^ variation of similar import.
Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.11. Subdivision (c)(9) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
Required disclosures
Required disclosures would be ineffective if they appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus the type size to be used for required disclosures is specified to ensure that the disclosures will be conspicuous.
RULE 4-7.3 ADVERTISEMENTS IN THE PUBLIC PRINT MEDIA
(a) Generally. Advertisements disseminated in the public print media are subject to the requirements of rule 4-7.2.
(b) Disclosure Statement. Except as otherwise provided in this subdivision, all advertisements other than lawyer referral service advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.” Lawyer referral service advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer’s qualifications and experience.” Outdoor advertisements may contain, in lieu of the above disclosure, the following abbreviated version: “Before choosing a lawyer, ask for written information about the lawyer’s legal qualifications ’ and experience.” Disclosure statements must-appear in type that-is clearly legible and is no-smaller than-eae-fourth of the size of the -largest type otherwise — appearing—⅛—the—advertisement. These disclosures, however, need not appear in advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (c) (11)(12) of rule 4-7.2, or written communications sent in compliance with rule 4-7.4.
Comment
The disclosure required by this rule is designed to encourage the informed selec *516 tion of a lawyer. A prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. — The required disclosure- would -be ineffective if it appeared in an advertisement so briefly or minutely as to be-overlooked or ignored. Thus — the type size to be-used for — the disclosure is specified to ensure that the disclosure will be conspicuous.
RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) Solicitation. Except as provided in subdivision (b) of this rule, a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer’s doing so is the lawyer’s pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer’s behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term “solicit” includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes (i) any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule, and (ii) any electronic mail communication directed to a specific recipient and not meeting the requirements of subdivision (c) of rule 4-7.6.
(b) Written Communication.
(1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer’s behalf or on behalf of the lawyer’s firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer’s firm, a written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:
(A) the written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than 30 days prior to the mailing of the communication;
(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer .in the matter;
(C) it has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
(E) the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or is improper under subdivision (b)(1) of rule 4-7.2; or
(F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
(A) Written communications to a prospective client are subject to the requirements of rule 4-7.2.
(B) The first page of such written communications shall be plainly *517 marked “advertisement” in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red “advertisement” mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the “advertisement” mark in red ink shall appear on the address panel of the brochure or pamphlet and on the inside of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the “advertisement” mark.
(C) A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be filed with the standing committee on advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.7. The lawyer also shall retain a copy of each written communication for B years. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent.
(D) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
(E) Every written communication shall be accompanied by a written statement detailing the background, training and experience of the lawyer or law firm. This statement must include information about the specific experience of the advertising lawyer or law firm in the area or areas of law for which professional employment is sought. Every written communication disseminated by a lawyer referral service shall be accompanied by a written statement detailing the background, training, and experience of each lawyer to whom the recipient may be referred.
(F) If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size 1 size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
(G) The first sentence of any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall be: “If you have already retained a lawyer for this matter, please disregard this letter.”
(H) Written communications shall be--on-letter-sized paper rather than legal-sized paper and^shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
(I) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, any written communication concerning a specific matter shall include a statement so advising the client.
(J) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information *518 prompting the communication. The disclosure required by this rule shall be specific enough to help the recipient understand the extent of the lawyer’s knowledge regarding the recipient’s particular situation.
(K) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client’s legal problem.
Comment
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer’s own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the 30-day restriction, particularly since lawyer advertising permitted under these rules offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client’s judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and perhaps cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action that relate to an accident, disaster, death, or injury, but only if mailed at least 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses that experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes must be clearly marked “advertisement.” This will avoid the recipient’s perceiving that there is a need to open the *519 envelope because it is from a lawyer or law firm, only to find the recipient is being solicited for legal services. With the envelope and letter marked “advertisement,” the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient’s particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient’s matter if the lawyer does not.
This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement that the lawyer or the lawyer’s law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under other rules in this subchapter.
RULE 4-7.5 ADVERTISEMENTS IN THE ELECTRONIC MEDIA OTHER THAN COMPUTER-ACCESSED COMMUNICATIONS
(a) Generally. With the exception of computer-based advertisements (which are subject to the special requirements set forth in rule 4-7.6), all advertisements in the electronic media, including but not limited to television and radio, are subject to the requirements of rule 4-7.2.
(b) Appearance on Television or Radio. Advertisements on the electronic media such as television and radio may contain-, — but are not necessarily limited -to containing, some or-all-of the information listed in-rule 4-7.2(c)(ll)- The information shall be articulated by- a single human voice — or on-screen -text, with no -background-sound other than instrumental mu-sife — No person’s voice or image, other than that of a lawyer who is a member of the-firm whose--services are advertised, may be used in a television or radio advertisement. — Visual images appearing in a television advertisement shall be limited to the advertising lawyer in front of a background consisting of a single solid color, a set of law books in an unadorned bookcase, or the-lawyer’s own office (with no other office -personnel shown). — A limited exception-applies to -lawyer referral semce-ad-vertisements permitted under rule 4-7,11-, insofar as a non-attor-ney spokesperson may speak or appear — on behalf of the participating attorneys-in television or radio advertisements. — If-such a spokesperson is used, the spokesperson shall provide a spoken disclosure -identifying herself or himself-as a spokesperson and disclosing that she or he is not-amattorney- — Television and radio advertisements by lawyer referral services are-otherwise^ubjectshall conform to the requirements of this rule.
*520 (1) Prohibited Content. Television and radio advertisements shall not contain:
(A) any feature that is deceptive, misleading, manipulative, or that is likely to confuse the viewer;
(B) any spokesperson’s voice or image that is recognizable to the public; or
(C) any background sound other than instrumental music.
(2) Permissible Content. Television and radio advertisements may contain:
(A) Images that otherwise conform to the requirements of these rules; or
(B) A non-attorney spokesperson speaking on behalf of the attorney or law firm, as long as the spokesperson is not a celebrity recognizable to the public. If a spokesperson is used, the spokesperson shall provide a spoken disclosure identifying the spokesperson as a spokesperson and disclosing that the spokesperson is not an attorney.
Comment
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public’s confidence in the legal profession and this country’s system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
This rule is designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and' to encourage the provision of useful information to the public about the availability and terms of legal services. Thus, the rule allows lawyer advertisements in which a lawyer who is a member of the advertising firm personally appears to speak regarding the legal services the lawyer or law firm is available to perform, the fees to be charged for such services, and the background and expexience of the lawyer or law firm. The prohibition against false, misleading, or manipulative advertising is intended to preclude, among other things, the use of scenes creating suspense, scenes containing exaggerations, or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. Although dialogue is not necessarily prohibited under this rule, advertisements using dialogue are more likely to be misleading or manipulative than those advertisements using a single lawyer to articulate factual information about the lawyer or law firm’s services.
A firm partner or shareholder, of course, is a “member” of a law firm within the *521 intent of the rule; likewise, a lawyer who is a law firm associate as defined in The Florida Bar v. Fetterman, 439 So.2d 835 (Fla.1983) is a firm “member.” Whether other lawyers are “members” of a firm for purposes of this rule must be evaluated in light of criteria that include whether the lawyer’s practice is physically located at the firm and whether the lawyer practices solely through the firm. There should be a presumption that lawyers other than partners, shareholders, or associates are not “members” of a law firm for purposes of this rule.
The prohibition against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of .jingles.
RULE 4-7.8 EXEMPTIONS FROM THE FILING AND REVIEW REQUIREMENT
The following are exempt from the filing requirements of rule 4-7.7:
(a) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains so-neither illustrations and nor information other than thatpermissible content of advertisements set forth is — subdivision (c)(U-)-of-rule -4 — ¡^elsewhere in this sub-chapter. This exemption extends--to-television-advertisements only if the visual display-featured -is- such- advertisements is limited-te- the words spoken by the- announcer.
(b) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution. In determining whether an announcement is a public service announcement for purposes of this rule and subdivision (c)(ll)(I) of rule 4-7.2,the rule setting forth permissible content of advertisements, the following are criteria that may be considered:
(1) whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(2) whether the announcement contains Information concerning the lawyer’s or law firm’s area of practice, legal background, or experience;
(3) whether the announcement contains the address or telephone number of the lawyer or law firm;
(4) whether the announcement concerns a legal subject;
(5) whether the announcement contains legal advice; and
(6) whether the lawyer or law firm paid to have the announcement published.
(c) A listing or entry in a law list or bar publication.
(d) A communication mailed only to existing clients, former clients, or other lawyers.
(e) Any written communications requested by a prospective client.
(f) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing or former clients.
*522 (g) Computer-accessed communications as described in subdivision (b) of rule 4-7.6.
Comment
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in this rule and rule 4-7.2. Subdivisions (b)(1) — (6) of this rule respond to the court’s concern by setting forth criteria that, while not intended to be exclusive, provide the needed guidance. With the exception of'subdivision (b)(3), these criteria are based on factors considered by the court in Doe.
RULE 4-7.11 LAWYER REFERRAL SERVICES
(a)When Lawyers May Accept Referrals. A lawyer shall not accept referrals from a lawyer referral service unless the service:
(1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
(2) receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
(3) refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida;
■ (4) carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
(5) furnishes The Florida Bar, on a quarterly basis, with the names and Florida bar membership numbers of all lawyers participating in the service; aiid
(6) furnishes The Florida Bar, on a quarterly basis, the names of all persons authorized to act on behalf of the service;
(7) responds in writing, within 15 days, to any official inquiry by bar counsel when bar counsel is seeking information described in this subdivision or conducting an investigation into the conduct of the service or an attorney who accepts referrals from the service;
(68) neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is subject to chapter 8 of these rules-; and
(9) uses its actual legal name or a registered fictitious name in all communications with the public.
(b) Responsibility of Lawyer. A lawyer who accepts referrals from a lawyer referral service is responsible for ensuring that any advertisements or written communications used by the service comply with the requirements of the Rules Regulating The Florida Bar, inoludingand that the service is in compliance with the provisions of this subchapter.
(c) Definition of Lawyer Referral Service. A “lawyer referral service” is:
(1) any person, group of persons, association, organization, or entity that receives a fee or charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers; or
(2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone *523 number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program.
A pro bono referral program, in which the participating lawyers do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.
Comment
Every citizen of the state should have ready access to the legal system. A person’s access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person’s legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
It is in the public interest that a person seeking the assistance of counsel receive accurate information to select or be matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
One who avails oneself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer’s ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer’s paying a pre-ar-ranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer’s ability to exercise independent legal judgment is in that circumstance minimal.
It is in the public interest that a person receive legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer at arm’s length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability *524 participate in a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
To enable The Florida Bar to fulfill its obligation to protect the public from unethical or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida Bar with the names of its participating lawyers.
RULE 4-8.4 MISCONDUCT
A lawyer shall not:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
(e) state or imply an ability to influence improperly a government agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;
(g) fail to respond, in writing, to any official inquiry by bar counsel or a disciplinary agency, as defined elsewhere in these rules, when bar counsel or the agency is conducting an investigation into the lawyer’s conduct. A written response shall be made:
(1) within 15 days of the date of the initial written investigative inquiry by bar counsel, grievance committee, or board of governors;
(2) within 10 days of the date of any follow-up written investigative inquiries by bar counsel, grievance committee, or board of governors;
(3) within the time stated in any subpoena issued under these Rules Regulating The Florida Bar (without additional time allowed for mailing);
(4) as provided in the Florida Rules of Civil Procedure or order of the referee in matters assigned to a referee; and
(5) as provided in the Florida Rules of Appellate Procedure or order of the Supreme Court of Florida for matters pending action by that court.
Except as stated otherwise herein or in the applicable rules, all times for response shall be calculated as provided elsewhere in these Rules Regulating The Florida Bar and may be extended or shortened by the inquirer upon good cause shown;
(h) willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation; or
(i) engage in sexual conduct with a client or a representative of a client that exploits or adversely affects the interests of the client or the lawyer-client relationship including, but not limited to:
*525 (1) requiring or demanding sexual relations with a client or a representative of a client incident to or as a condition of a legal representation;
(2) employing coercion, intimidation, or undue influence in entering into sexual relations •with a client or a representative of a client; or
(3) continuing to represent a client if the lawyer’s sexual relations with the client or a representative of the client cause the lawyer to render incompetent representation.
Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving “moral turpitude.” That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status', employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the public’s confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
A lawyer’s obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) and rule 3-7.6 (gh)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a *526 proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes. That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrear-ages.
Subdivision (i) proscribes exploitation of the client and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. -^A sexual relationship between a-lawyer and a client that exists before-commencement of the lawyer-client relationship-does not violate.this subdivision if the lawyer and client-continue to engage in sexual conduct during the-legal representation. For purposes of this subdivision, client means an individual, notor a representative of the client, including but not limited to a duly authorized constituent of a corporate or other non-personal entity, and lawyer refers only to the lawyer(s) engaged in the legal representation and not other members of the law firm.
RULE 4-8.6 AUTHORIZED BUSINESS ENTITIES
(a) Authorized Business Entities. Lawyers may practice law in the form of professional service corporations, professional limited liability companies, sole proprietorships, general partnerships, or registered limited liability partnerships organized or qualified under applicable law. A professional service-corporation, a professional limited liability company, or a registered limited liability partnership is-anSuch forms of practice are authorized business entityies under these rules.
(b) Practice of Law Limited to Members of The Florida Bar. No authorized business entity may engage in the practice of law in the state of Florida or render advice under or interpretations of Florida law except through officers, directors, partners, managers, agents, or employees who are qualified to render legal services in this state.
(c) Qualifications of Managers, Directors and Officers. No person shall serve as a partner, manager, director or executive officer of an authorized business entity and engage in the practice of law in Florida unless such person is legally qualified to render legal services in this state. For purposes of this rule the term “executive officer” shall includé the president, vice-president, or any other officer who performs a policy-making function.
(d) Violation of Statute or Rule. A lawyer who, while acting as a shareholder, member, officer, director, partner, manager, agent, or employee of an authorized *527 business entity and engaged .in the practice of law in Florida, violates or sanctions the violation, of the authorized business entity statutes or the Rules Regulating The Florida Bar shall be subject to disciplinary action.
(e) Disqualification of Shareholder, Member, or Partner; Severance of Financial Interests. Whenever a shareholder of a professional service corporation, a member of a professional limited liability company, proprietor, or partner in a registered limited liability partnership becomes legally disqualified to render legal services in this state, said shareholder, member, ■proprietor, or partner shall sever all employment with and financial interests in such authorized business entity immediately. For purposes of this rule the term “legally disqualified” shall not include suspension from the practice of law for a period of time less than 91 days. Severance of employment and financial interests required by this rule shall not preclude the shareholder, member, proprietor, or partner from receiving compensation based on legal fees generated for legal services performed during the time when the shareholder, member, proprietor, or partner was legally qualified to render legal services in this state. This provision shall not prohibit employment of a legally disqualified shareholder, member, proprietor, or partner in a position that does not render legal service nor payment to an existing profit sharing or pension plan to the extent permitted in rules 3-6.1 and 4 — 5.4(a)(3), or as required by applicable law.
(f) Cessation of Legal Services. Whenever all shareholders of a professional service corporation, or all members of a professional limited liability company, or all partners in a registered-limited liability partnership become legally disqualified to render legal services in this state, the authorized business entity shall cease the rendition of legal services in Florida.
(g)Application of Statutory Provisions. Unless otherwise provided in this rule, each shareholder, member, or partner of an authorized business entity shall possess all rights and benefits and shall be subject to all duties applicable to such shareholder, member, or partner provided by the statutes pursuant to which the authorized business entity was organized or qualified.
Comment
In 1961 this court recognized the authority of the legislature to enact statutory provisions creating corporations, particularly professional service corporations. But this court also noted that “[ejnabling action by this Court is therefore an essential condition precedent to authorize members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The 1961 Act.” In Re The Florida Bar, 133 So.2d 554, at 555 (Fla. 1961).
The same is true today, whatever the form of business entity created by legislative enactment. Hence, this rule is adopted to continue authorization for members of the bar to practice law in the form of a professional service corporation, a professional limited liability company, or a registered limited liability partnership. These type of entities-are collectively referred to as authorized business entities^ This rule does not preclude any-also permits a member of the bar from practicing to practice law as a sole proprietor or as a member of a general partnership. These type of entities are collectively referred to as authorized business entities.
Limitation on rendering legal services
No person may render legal services on behalf of an authorized business entity unless that person is otherwise authorized to *528 do so via membership in the bar or through a motion for leave to appear (pro hac vice). Neither the adoption of this rule nor the statutory provisions alter this limitation.
Employment by and financial interests in a professional service corporationan authorized business entity
This rule and the statute require termination of employment of a shareholder, member, or partner when same is “legally disqualified” to render legal services. The purpose of this provision is to prohibit compensation based on fees for legal services rendered at a time when the shareholder, member, or partner cannot render the same type of services. Continued engagement in capacities other than rendering legal services with the same or similar compensation would allow circumvention of prohibitions of sharing legal fees with one not qualified to render legal services. Other rules prohibit the sharing of legal fees with nonlawyers and this rule continues the application of that type of prohibition. However, nothing in this rule or the statute prohibits payment to the disqualified shareholder, member, or partner for legal services rendered while the shareholder, member, or partner was qualified to render same, even though payment for the legal services is not received until the shareholder, member, or partner is legally disqualified.
Similarly, this rule and the statute require the severance of “financial interests” of a legally disqualified shareholder, member, or partner. The same reasons apply to severance of financial interests as those that apply to severance of employment. Other provisions of these rules proscribe limits on employment and the types of duties that a legally disqualified shareholder, member, or partner may be assigned.
Practical application of the statute and this rule to the requirements of the practice of law mandates exclusion of short term, temporary removal of qualifications to render legal services. Hence, any suspension of less than 91 days, including membership fees delinquency suspensions, is excluded from the definition of the term. These temporary impediments to the practice of law are such that with the passage of time or the completion of ministerial acts, the member of the bar is automatically qualified to render legal services. Severe tax consequences would result from forced severance and subsequent reestablishment (upon reinstatement of qualifications) of all financial interests in these instances.
However, the exclusion of such suspensions from the definition of the term does not authorize the payment to the disqualified shareholder, member, or partner of compensation based on fees for legal services rendered during the time when the shareholder, member, or partner is not personally qualified to render such services. Continuing the employment of a legally disqualified shareholder, member, or partner during the term of a suspension of less than 91 days requires the authorized business entity to take steps to avoid the practice of law by the legally disqualified shareholder, member, or partner, the ability of the legally disqualified shareholder, member, or partner to control the actions of members of the bar qualified to render legal services, and payment of compensation to the legally disqualified shareholder, member, or partner based on legal services rendered while the legally disqualified shareholder, member, or partner is not qualified to render them. Mere characterization of continued compensation, which is the same or similar to that the legally disqualified shareholder, member, or partner received when qualified to ren *529 der legal services, is not sufficient to- satisfy the requirements of this rule.
Profit sharing or pension plans
To the extent that applicable law requires continued payment to existing profit sharing or pension plans, nothing in this rule or the statute may abridge such payments. However, if permitted under applicable law the amount paid to the plan for a legally disqualified shareholder, member, or partner shall not include payments based on legal services rendered while the legally disqualified shareholder, member, or partner was not qualified to render legal services.
Interstate Practice
This rule permits members of The Florida Bar to engage in the practice of law with lawyers licensed to practice elsewhere in an authorized business entity organized under the laws of another jurisdiction and qualified under the laws of Florida (or vice-versa), but nothing herein is intended to affect the ability of non-members of The Florida Bar to practice law in Florida. See, e.g., The Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978).
The terms qualified and legally disqualified are imported from the Professional Service Corporation Act (Chapter 621, Florida Statutes).
RULE 5-1.1 TRUST ACCOUNTS
(a) Nature of Money or Property Entrusted to Attorney.
(1) Trust Account Required; Commingling Prohibited. A lawyer shall hold in trust, separate from the lawyer’s own property, funds and property of clients or third persons that are in a lawyer’s possession in connection with a representation. All funds, including advances for fees, costs, and expenses, shall be kept in a separate bank or savings and loan association account maintained in the state where the lawyer’s office is situated or elsewhere with the consent of the client or third person and clearly labeled and designated as a trust account. A lawyey may maintain funds belonging to the lawyer in the trust account in an amount no more than is reasonably sufficient to pay bank charges relating to the trust account.
(2) Compliance With Client Directives. Trust funds may be separately held and maintained other than in a bank or savings and loan association account if the lawyer receives written permission from the client to do so and provided that written permission is received before maintaining the funds other than in a separate account.
(3) Safe Deposit Boxes. If a member of the bar uses a safe deposit box to store trust funds or property, the member shall advise the institution in which the deposit box is located that it may include property of clients or third persons.
(b) Application of Trust Funds or Property to Specific Purpose. Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion.
(c) Liens Permitted. This subchapter does not preclude the retention of money or other property upon which the lawyer has a valid lien for services nor does it preclude the payment of agreed fees from the proceeds of transactions or collection.
(d) Controversies as to Amount of Fees. Controversies -as to the amount of *530 fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.
(e) Notice of Receipt of Trust Funds; Delivery; Accounting. Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(f) Disputed Ownership of Trust Funds. When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
(g)Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used herein, the term:
(A) “nominal or short term” describes funds of a client or third person that, pursuant to subdivision (3), below, the lawyer has determined cannot practicably be invested for the benefit of the client or third person;
(B) “Foundation” means The Florida Bar Foundation, Inc.;
(C) “IOTA account” means an interest or dividend-bearing trust account benefitting The Florida Bar Foundation established in an eligible institution for the deposit of nominal or short-term funds of clients or third persons;
(D) “Eligible Institution” means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Exchange Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below.
(E) “Interest or dividend-bearing trust account” means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a money market fund. A daily financial institution repurchase agreement must be fully collateralized by, and an open-end money market fund must consist solely of, United States Government Securities. A daily financial institution repurchase agreement may *531 be established only with an eligible institution that is deemed to be “well capitalized” or “adequately capitalized” as defined by applicable federal statutes and regulations. An open-end money market fund must hold itself out as a money market fund as defined by applicable federal statutes and regulations under the Investment Company Act of 1940, and have total assets of at least $250,000,000. The funds covered by this rule shall be subject to withdrawal upon request and without delay.
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing law from an office or other business location within the state of Florida shall be deposited into one or more IOTA accounts, except as provided elsewhere in these rules-with respect to -fends maintained other — than in a bank aceount,-or as provided in this chapter. Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of this rule.
(3) Determination of Nominal or Short Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
(A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaetion(s) or proceeding(s);
(D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
(E) minimum balance requirements and/or service charges or fees imposed by the eligible institution.
The determination of whether a client’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(4) Notice to Foundation. Lawyers or law firms shall advise the Foundation, at Post Office Box 1553, Orlando, Florida 32802-1553, of the establishment of an IOTA account for funds covered by this rule. Such notice shall include: the IOTA account number as assigned by the eligible institution; the name of the lawyer or law firm on the IOTA account; the eligible institution name; the eligible institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established the IOTA account.
(5) Eligible Institution Participation in IOTA. Participation in the IOTA program is voluntary for banks, savings and loan associations, and investment companies. Institutions that choose to offer and maintain IOTA accounts must meet the following requirements:
(A) Interest Rates and Dividends. Eligible institutions shall maintain *532 IOTA accounts which pay the highest interest rate or dividend generally available from the institution to its non-IOTA account customers when IOTA accounts meet or exceed the same minimum balance or other account eligibility qualifications, if any.
(B) Determination of Interest Rates and Dividends. In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may consider factors, in addition to the IOTA account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that such factors do not discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.
(C) Remittance and Reporting Instructions. Eligible institutions shall:
(i) calculate and remit interest or dividends on the balance of the deposited funds, in accordance with the institution’s standard practice for non-IOTA account customers, less reasonable service charges or fees, if any, in connection with the deposited funds, at least quarterly, to the Foundation;
(ii) transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer’s or law firm’s IOTA account number as assigned by the institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and
(in) transmit to the depositing lawyer or law firm, for each remittance, a statement showing the amount of interest or dividend paid to the Foundation, the rate of interest applied, and the period for which the statement is made.
(6) Small Fund Amounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable eligible institution service charges or fees.
(7) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of this rule.
(h) Interest on Funds That Are Not Nominal or Short-Term. A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short-term as defined elsewhere in this subchapter shall not receive benefit from interest on funds held in trust.
(hi) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any uni *533 dentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if the owner is then entitled to receive the same. Trust funds and property that remain unidentifiable and funds or property that are held for missing owners after being designated as such shall, after diligent search and inquiry fail to identify the beneficial owner or owner’s address, be disposed of as provided in applicable Florida law.
(ij) Disbursement Against Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients, owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds” means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made to the lawyer’s trust account has not been finally settled and credited to the account, the lawyer may disburse funds from the trust account in reliance on such deposit:
(1) when the deposit is made by certified check or cashier’s check;
(2) when the deposit is made by a check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender;
(3) when the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(4) when the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the state of Florida or on the escrow or trust account of a real estate broker licensed under applicable Florida -law when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of timé;
(5) when the deposit is made by a check issued by the United States, the State of Florida, or any agency or political subdivision of the State of Florida;
(6) when the deposit is made by a check or draft issued by an insurance company, title insurance company, or a licensed title insurance agency authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.
A lawyer’s disbursement of funds from a trust account in reliance on deposits that *534 are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer, upon obtaining knowledge of the failure, must immediately act to protect the property of the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
Comment
A lawyer must hold property of others with the care required of a professional fiduciary. This chapter requires maintenance of a bank or savings and loan association account, clearly labeled as a trust account and in which only client or third party trust funds are held.
Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances.
All property that is the property of clients or third persons should be kept separate from the lawyer’s business and personal property and, if money, in 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short-term as defined elsewhere in this subchapter should hold the funds in a separate interest-bearing account with the interest accruing to the benefit of the client or third person unless directed otherwise in writing by the client or third person.
Lawyers often receive funds from third parties from which the lawyer’s fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer’s contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
Third parties, such as a client’s creditors, may have just claims against funds or other property in a lawyer’s custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, and, where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
The obligations of a lawyer under this chapter are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.
Each lawyer is required to be familiar with and comply with the Rules Regulat *535 ing Trust Accounts as adopted by the Supreme Court of Florida.
Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This does not preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collections.
Advances for fees and costs (funds against which costs and fees are billed) are the property of the client or third party paying same on a client’s behalf and are required to be maintained in trust, separate from the lawyer’s property. Retainers are not funds against which future services are billed. Retainers are funds paid to guarantee the future availability of the lawyer’s legal services and are earned by the lawyer upon receipt. Retainers, being funds of the lawyer, may not be placed in the client’s trust account.
The test of excessiveness found elsewhere in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers, nonrefundable retainers, and minimum or flat fees.
RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
(a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law as members of The Florida Bar except special trust funds received or disbursed by an attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of such special trust account. These rules shall apply to matters wherein a choice of laws analysis indicates that such matters are governed by the laws of Florida.
(b) Minimum Trust Accounting Records. The following are the minimum trust accounting records that shall be maintained:
(1) A separate bank or savings and loan association account or accounts in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
(A) the date and source of all trust funds received; and
(B) the client or matter for which the funds were received.
(3) Original canceled checks, all of which must be numbered consecutively, or, if the financial institution wherein the trust account is maintained does not return the original checks, copies there-efthat include all endorsements, as provided by the financial institution.
(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
*536 (A) the identification of the client or matter for which the funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing:
(A) the identification of the client or matter for which trust funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
(c) Minimum Trust Accounting Procedures. The minimum trust accounting procedures that shall be followed by all members of The Florida Bar (when a choice of laws analysis indicates that the laws of Florida apply) who receive or disburse trust money or property are as follows:
(1)The lawyer shall cause to be made monthly:
(A) reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
(B) a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons therefor.
(2) At least annually, the lawyer shall prepare a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least 6 years.
(4) The lawyer or law firm shall authorize and request any bank or savings and loan association where the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, in the event any trust check is returned due to insufficient funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Record Retention. A lawyer or law firm that receives and disburses client or third party funds or property shall maintain the records required by this chapter for 6 years subsequent to the final conclusion of each representation in which the trust funds or property were received.
(e) Audits. Any of the following shall be cause for The Florida Bar to order an audit of a trust account:
*537 (1) failure to file the trust account certificate required by rule 5-1.2(c)(5);
(2) return of a trust account check for insufficient funds or for uncollected funds, absent bank error;
(3) filing of a petition for creditor relief on behalf of an attorney;
(4) filing of felony charges against an attorney;
(5) adjudication of insanity or incompetence or hospitalization of the attorney under The Florida Mental Health Act;
(6) filing of a claim against the attorney with the Clients’ Security Fund;
(7) when requested by a grievance committee or the board of governors; or
(8) upon court order.
(f) Cost of Audit. Audits conducted in any of the circumstances enumerated in this rule shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and fands held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.
(g) Failure to Comply With Subpoena.
(1)Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of same in these disciplinary proceedings.
(2) Notice of noncompliance with a subpoena may be filed with the Supreme Court of Florida only if a grievance committee or a referee shall first find that ■ no good cause exists for failure to comply. A grievance committee or referee shall hear the issue of noncompliance and issue findings thereon within 30 days of the request for issuance of the notice of noncompliance.
(3) After notice is filed with the Supreme Court of Florida by The Florida Bar that a member of the bar has failed to fully comply with a properly issued subpoena directing the production of any trust accounting records that are required by these rules, unless good cause for the failure to comply is shown, the member may be suspended from the practice of law in Florida, by order of the Supreme Court of Florida, until such time as the member fully complies with the subpoena and/or until further order of the court.
(4) Any member subject to suspension under this rule may petition the court, within 10 days of the filing of the notice, to withhold entry of the order of suspension or at any time after entry of an order of suspension may petition the court to terminate or modify the- order of suspension. If the court determines it necessary to refer the petition to terminate or modify the suspension to a referee for receipt of evidence, the referee proceedings shall be conducted in the same manner as proceedings before a referee on a petition to withhold, terminate, or modify an order of emergency suspension, as elsewhere provided in these rules.
*538 Comment
These — pules—shall—apply- to — matters wherein a-choice of laws analysis indicates that such matters — are ■ governed by- the laws of Flor-ida.-
A lawyer-must hold property of others with the care required- of — a—professional fiduciary. — This chapter requires maintenance of a-bank or savings aad-loan-associ-ation account, clearly labeled as a trust account and in 'which only client or third party trust-lands are held.
Securities should- be kept in a safe deposit box, except when some other form of safekeeping- is war-panted -hy special circumstances.
All property that is the- property of clients or- third persons should be kept separate from-the lawyer’s — business and personal property -and, if money, in 1 or more trust-accounts-,-unless-requested otherwise in writing by the client. — Separate trust accounts may be warranted- when administering estate-money-or acting in similar fiduciary capacities.
■Lawyers often receive funds from third par-ties from which-the lawyer’s fee will be paiA — If there is r-isk that-the client may divert- the -funds without paying the fee, the-lawyer is not required to remit the portion from- which-the fee- is to be paid. However, a-lawyer-may not hold funds to eoerce a client into-accepting the lawyer’s contention. — The disputed -portion of the funds-should be kept in trust and the lawyer should suggest-means for prompt resolution of-the dispute, such as arbitra-tiom — The undisputed portion of the-funds shall- be promptly- distributed;
Third parties, such- as a-client’s creditors, may have just-claims against funds or other property in a lawyer’s custody. — A lawyer may-have a-duty under applicable law-- to protect such third party claims
against-wrongful interference by-the client and, accordingly, may refuse to-surrender the property to the client. — However,-a lawyer-should not unilaterally assume -to arbitrate a dispute between-the-elient and the third party, and, where appropriate? the lawyer should consider-the-possibility of depositing fee-property or funds in dispute into the registry of the - applicable eou-rt so-that the matter may be adjudicat-eA
The -obligations of a lawyer under this chapter- are independenfeof those arising from activity other than rendering legal sendees. — For example^ — a lawyer who serves as an escrow agenLis governed by the- applicable law-relafeg-to fiduciaries even though the lawyer does not- render legal sendees in the transaction.
-Each-lawyer -is required to be familiar with and comply with Rules Regulating Trust Accounts as adopted by the Supreme Court of Florida.
-Money-or other property-entrusted to a lawyer -for a specific purpose,-Including advances-for fees, costs, and expenses,-is ■held in- trust and must be applied only to that-purpose. — Money and other property of cliente.-coming into the h-ands-of a lawyer are not subject to counterclaim or setoff for-attorney’s fees, and a-refusal to account-for and deliver over-such -property upon demand shall be a-eonversion. — This does not preclude the reten-tion-of money or other property upon wdiich a lawyer has a valid lien for sendees or to preclude the payment of agreed fees from-the-proceeds of transactions or-collections.
Advances for — fees—and costs — (funds against-which costs and fees-are billed) are fee-property of the client or third party paying -same-on-ar-clients-behalf and are req-uired-to be -maintained in trust, separate from the lawyer’s property. — Retainers are not funds ■ against which future services are billed. — Retainers are funds *539 paid to-guarantee the future availability-of the lawyer’s legal serviees-and are earned by the — lawyer upon receipt. — Retainers? being funds of-the lawyer, may not be placed in-the clients trust-account.
The test of excessiveness- found-eise-where in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers-nonrefandable retainers, and minimum or flat feefe
Rule 6-1.5 Disqualification as Attorney Due to Conflict.
(a) Members of the BLSE, Members of the Certification Committees, Members of the Board of Governors, and Employees of The Florida Bar. No member of the BLSE, member of a certification committee, member of the board of governors, or employee of The Florida Bar shall represent a party other than The Florida Bar in certification proceedings authorized under these rules.
(b) Former Members of the BLSE, Former Members of the Certification Committees, Former Board Members, and Former Employees. No former member of the BLSE, former member of a certification committee, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in certification proceedings authorized under these rules if personally involved to any degree in the matter while a member of the BLSE, certification committee, board of governors, or while an employee of The Florida Bar.
A former member of the BLSE, former member of a certification committee, former member of the board of governors, or former employee of The Florida Bar who did not participate personally in any way in the matter or in any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such matter, shall not represent any party except The Florida Bar for 1 year after such service without the express consent of the board.
(c)Partners, Associates, Employers, or Employees of the Firms of BLSE Members, Certification Committee Members, or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Members of the firms of board of governors members, BLSE members, or certification committee members shall not represent any party other than The Florida Bar in certification proceedings authorized under these rules without the express consent of the board-
Cd) Partners, Associates, Employers, or Employees of the Firms of Former BLSE Members, Former Certification Committee Members, or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Attorneys in the firms of former board of governors members, former BLSE members, or former certification committee members shall not represent any party other than The Florida Bar in certification proceedings authorized under these rules for 1 year after the former member’s service without the express consent of the board.
RULE 6-3.1 ADMINISTRATION
The board' of legal specialization and education shall have the authority and responsibility to administer the program for regulation of certification including:
(a) recommending to the board of governors areas in which certificates may be granted and providing procedures by which such areas may be determined, refined, or eliminated;
(b) recommending to the board of governors minimum, reasonable, and nondis *540 criminatory standards concerning education, experience, proficiency,- and other relevant matters for granting certificates in areas of certification;
(c) providing procedures for the investigation and testing of the qualifications of applicants and certificate holders;
(d) awarding certificates to qualified applicants;
(e) encouraging law schools, the continuing legal education committee of The Florida Bar, voluntary' bar associations, and other continuing legal education entities to develop and maintain a program of continuing legal education to meet the standards described by the plan;
(f) cooperating with other agencies of .The Florida Bar in establishing and enforcing standards of professional conduct necessary for the recognition and regulation 'Of certification;
(g) cooperating with the standing committee on specialization of the American Bar Association and with the agencies in other states engaged in the regulation of legal specialization;
(h) establishing policies, procedures, and appropriate fees to evaluate and ac-
credit lawyer certifying organizations and programs;
(hi) reporting as required, but at least annually, to the board of governors on the status and conditions of the plan;
(ij) determining standards, rules, and regulations to implement these rules in accordance with the minimum standards prescribed by the Supreme Court of Florida; , and
(jk) delegating to The Florida Bar staff any of the administrative responsibilities of the board of legal specialization and education providing said board retains responsibility for staff decisions.
APPENDIX — Continued
RULE 6-3.10 RIGHT OF APPEAL
A lawyer who is refused certification or recertification, or whose certificate is revoked by the board of legal specialization and education, or any person who is aggrieved by a ruling or determination of that board shall have the right to appeal the ruling to the board of governors under such rules and regulations as it may prescribe. Exhaustion of this right of appeal shall be a condition precedent to judicial review by the Supreme Court of Florida. Such review shall be by petition for review in accordance with the procedures set forth in rule 9.100, Florida Rules of Appellate Procedure.
6-24 STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED CONSTRUCTION LAW LAWYER
RULE 6-24.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Construction Lawyer.” The purpose of the standards is to identify those lawyers who practice construction law and have the special knowledge, skills, and proficiency, as well as the character, ethics, and reputation for professionalism, to be properly identified to the public as certified construction lawyers.
RULE 6-24.2 DEFINITIONS
(a) Construction Law. “Construction law” is the practice of law dealing with matters relating to the design and construction of improvements on private and public projects including, but not limited to, construction dispute resolution, contract negotiation, preparation, award and administration, lobbying in governmental hearings, oversight and document review, construction lending and insurance, construction licensing, and the analysis and *541 litigation of problems arising out of the Florida Construction Lien Law, section 255.05, Florida Statutes, and the federal Miller Act, 40 U.S.C. § 270.
(b) Practice of Law. The “practice of law” for this area is set out in rule 6-3.5(e)(1).
(c) Construction Law Certification Committee. The construction law certification committee shall include a minimum of 3 members with experience in transactional construction law and 3 members with experience in construction law litigation.
RULE 6-24.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of 5 years as of the date of filing an application. The years of law practice need not be consecutive.
(b) Substantial Involvement. To become certified as a construction lawyer, a lawyer must demonstrate substantial involvement in construction law. Substantial involvement shall include the following:
(1) At least 5 years of actual practice of law of which at least 40 percent has been spent in active participation in construction law. At least 3 years of this practice shall be immediately preceding application.
(2) Substantial involvement means the applicant has devoted 40 percent or more of the applicant’s practice to matters in which issues of construction law are significant factors and in which the applicant had substantial and direct participation in those construction law issues. An applicant must furnish information concerning the frequency of the applicant’s work and the nature of the issues involved. For the purposes of this subdivision the “practice of law” shall be as defined in rule 6 — 3.5(c)(1), except that it shall also include time devoted to lecturing and/or authoring books or articles on construction law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the construction law certification committee but written or oral supplementation may be required.
(c) Peer Review. The applicant shall submit the names and addresses of 5 attorneys who are familiar with the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of construction law, as well as the applicant’s character, ethics, and reputation for professionalism. The board of legal specialization and education and the construction law certification committee may authorize references from persons other than attorneys' and may also make such additional inquiries as deemed appropriate.
(d) Education. The applicant must demonstrate that during the 3-year period immediately preceding the date of application, the applicant has met the continuing legal education requirements in construction law as follows. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 45 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to con *542 struction law. The education requirement may be satisfied by 1 or more of the following:
(1) attendance at continuing legal education seminars meeting the requirements set forth above;
(2) lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) authoring articles or books published in professional periodicals or other professional publications;
(4) teaching courses in construction law at an approved law school or other graduate level program presented by a recognized professional education association;
(5) completing such home study programs as may be approved by the board of legal specialization and education or the construction law certification committee, subject to the limitation that no more than 50 percent of the required number of hours of education may be satisfied through home study programs; or
(6) such other methods as may be approved by the board of legal specialization and education and the construction law certification committee.
The board of legal specialization and education and the construction law certification committee shall establish policies applicable to this rule, including, but hot limited to, approval of credit hours alloca-ble to any of the above-listed continuing legal education activities. Such policies shall provide that credit hours shall be allocable to each separate but substantially different lecture, article, or other activity described in subdivisions (2), (3), and (4) above.
(e) Examination. The applicant must pass an examination, applied uniformly to all applicants, to demonstrate sufficient knowledge, proficiency, and experience in the practice of law applicable to the design and construction of projects in Florida construction law to .justify the representation of special competence to the legal profession and the public.
RULE 6-24.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. A satisfactory showing, as determined by the board of legal specialization and education and the certification committee, of continuous and substantial involvement in construction law throughout the period since the last date of certification. The demonstration of substantial involvement of 40 percent or more during each year after certification or prior recertification shall be made in accordance with the standards set forth in rule 6-24.3(b).
(b) Education. Completion of at least 75 hours of continuing legal education since the last application for certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified in construction law.
(c) Peer Review. An applicant for re-certification shall submit the names and addresses of 5 attorneys or judges who are familiar with the applicant’s practice, not including lawyers who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for special competence and substantial involvement in the field of construction law, as well as the applicant’s character, ethics, and reputation for professionalism. The board of legal specialization and education and the construction law certification committee may also make such additional inquiries as they deem appropriate.
*543 RULE 10-4.1 GENERALLY
(a) Appointment and Terms. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. All appointees shall be residents of the circuit or have their principal office in the circuit. The terms of the members of circuit committees shall be for 43 years from the date of appointment by the court or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3- years2 consecutive 3-year terms. A member shall not be reappointed for a period of 31 years after the end of the member’s thirdsecond term provided, however, the expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Committee Chair. For each circuit committee there shall be a chair designated by the board of governorsdesignated reviewer of that committee. A vice-chair and secretary may be designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Quorum. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum.
(d) Panels. The circuit committee may be divided into panels of not fewer than 3 members, 1 of whom must be a nonlawyer. Division of the circuit committee into panels shall only be upon concurrence of the designated reviewer and the chair of the circuit committee. The 3-member panel shall elect 1 of its members to preside over the panel’s actions. If the chair or viee-chair of the circuit committee is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(e) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt report of its investigation and findings to bar counsel. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) exercising final authority to close cases not deemed by the circuit committee to warrant further action by The Florida Bar except those cases to which UPL staff counsel objects to the closing of the case;
(2) exercising final authority to close cases proposed to be resolved by cease and desist affidavit except those cases to which UPL staff counsel objects to the acceptance of a cease and desist affidavit;
(3) forwarding to bar counsel for review by the standing committee recommendations for closing cases by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident; and
(4) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(f) Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not less frequently ■ than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be set in advance by agreement between each committee and bar counsel.
*544 Rule 10-5.2 Disqualification as Attorney for Respondent Due to Conflict.
(a) Members of the Standing Committee on UPL (Standing Committee), Members of the Circuit UPL Committees (Circuit Committees), Members of the Board of Governors, and Employees of The Florida Bar, No member of the standing committee, member of a circuit committee, member of the Board of Governors of The Florida Bar, or employee of The Florida Bar shall represent a party other than The Florida Bar in UPL proceedings authorized under these rules.
(b) Former Members of the Standing Committee, Former Members of the Circuit Committees, Former Board Members, and Former Employees. No former member of the standing committee, former member of a circuit committee, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in UPL proceedings authorized under these rules if personally involved to any degree in the matter while a member of the standing committee, circuit committee, board of governors, or while an employee of The Florida Bar.
A former member of the standing committee, former member of a circuit committee, former member of -the board of governors, or former employee of The Florida Bar who did not participate personally in any way in the matter or in any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such matter, shall not represent any party except The Florida Bar for 1 year after such service without the express consent of the board.
(c)Partners, Associates, Employers, or Employees of the Firms of Standing Committee Members, Circuit Committee Members, or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Members of the firms of board of governors members, standing committee members, or circuit committee members shall not represent any party other than The Florida Bar in UPL proceedings authorized under these rules without the express consent of the board-
Cd) Partners, Associates, Employers, or Employees of the Firms of Former Standing Committee Members, Former Circuit Committee Members, or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Attorneys in the firms of former board of governors members, former standing committee members, or former circuit committee members shall not represent any party other than The Florida Bar in UPL proceedings authorized under these rules for 1 year after the former member’s service without the express consent of the board.
RULE 10-6.2 SUBPOENAS
(a) Issuance by Court. Upon receiving a written application of the chair of the standing committee or of a circuit committee or bar counsel alleging facts indicating that a person or entity is or may be practicing law without a license and that the issuance of a subpoena is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is located or the clerk of the Supreme Court of Florida shall issue subpoenas in the name, respectively, of the chief judge of the circuit or the chief justice for the attendance of any person and production of books and records before counsel or the investigating circuit committee or any member thereof at the time and *545 place within its circuit designated in such application. Such subpoenas shall be returnable to the circuit court of the residence or place of business of the person subpoenaed. A like subpoena shall issue upon application by any person or entity under investigation.
(b) Failure to Comply. Failure to comply with any subpoena shall constitute a contempt of court and may be punished by the Supreme Court of Florida or by the circuit court of the circuit to which the subpoena is returnable or where the con-temnor may be found. The circuit court to which the subpoena is returnable shall have power to enter such orders as may be necessary for the enforcement of the subpoena.
RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
(a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon barUPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10 — 7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
*546 (c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the eon-temnor may be found, as if said refusal were a contempt of that court.
(3) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
(4) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief or memorandum of law and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief or memorandum of law and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief or memorandum of law within 5 days of the date of service of the opposing party’s responsive brief or memorandum of law. Any party may request oral argument at the time that party’s brief or memorandum of law is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(d) Referee’s Report.
(1) Generally. At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, a statement of costs incurred and recommendations as to the manner in which costs should be taxed as provided-4s rule 10-7.1(d)(2) elsewhere in this chapter, and a recommendation for final disposition of the cause which may include the imposition of a civil penalty not to exceed $1000 per incident and a recommendation for restitution as provided elsewhere in this chapter. The original record shall be filed with the report. Copies of the referee’s report shall be served upon all parties by the referee at the time it is filed with the court.
(2) Costs. The referee shall have discretion to recommend the assessment of costs. Taxable costs of the proceeding shall include only:
(A) investigative costs;'
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;-and
*547 (H) travel and out-of-pocket expenses of counsel in the proceedings, including those of the respondent if acting as counsel; and
(HI) any other costs which may properly be taxed in civil litigation.
(3) Restitution. The referee shall have discretion to recommend that the respondent be ordered to pay restitution, which shall be paid before costs. In such instances, the amount of restitution shall be specifically set forth in the referee’s report and shall not exceed the amount paid to respondent by complainant(s). The referee’s report shall also state the name(s) of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed. The referee shall have discretion over the timing of payments and over how those payments are to be distributed to multiple complainants. In determining the amount of restitution to be paid to complainant(s), the referee shall consider any documentary evidence that shows the amount paid to respondent by complainant(s) including:
(A) cancelled checks;
(B) credit card receipts;
(C) receipts from respondent; and
(D) any other documentation evidencing the amount of payment.
The referee shall also have discretion to recommend that restitution shall bear interest at the legal rate provided for .judgments in this state. Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages.
(34) Stipulated Injunction. Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee.
The referee may approve the stipulation or reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(d)(1) shall be filed by the referee along with the stipulation. The respondent may agree to pay restitution in the stipulation. In such instances the amount of restitution, to whom it shall be made, how payments are to be made, the date by which it shall be completed, and whether interest as provided elsewhere in this chapter will be paid, shall be specifically set forth, in the stipulation.
(e) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief or memorandum of law in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief or memorandum of law within 20 days of service of the objector’s brief or memorandum of law. The objector may file a reply brief or memorandum of law within 10 days of service of the opposing party’s responsive brief or memorandum of law. Oral argument will be allowed at the court’s discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee’s report, the court shall review the report of the referee, together with any briefs or memoranda of law or objections filed in support of or opposition to such report. After review, the court shall determine *548 as a matter of law whether the -respondent has engaged in the unlicensed practice of law, whether the respondent’s activities should be enjoined by appropriate-order, whether costs should be awarded, whether restitution should be ordered, and whether further relief shall be granted. Any order of the court that contains an order of restitution shall contain a requirement that the respondent provide a monthly written report to the UPL Department of The Florida Bar detailing the complainant(s) to whom restitution has been made and the amounts paid. In the event respondent fails to pay the restitution as ordered by the court, The Florida Bar is authorized to file a petition for indirect criminal contempt as provided elsewhere in this chapter. .
(f) Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.
RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president, executive director of The Florida Bar, or the chair of the standing committee alleging facts indicating that a person, firm, or corporation is or may be .unlawfully practicing law or has failed to pay restitution as provided elsewhere in this chapter, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law or for the failure to pay restitution as ordered. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
(2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent’s omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel.
(1) Affidavit. A respondent asserting indigency shall file with the referee a completed affidavit containing the financial information required herein and stating that the affidavit is signed under oath and under penalty of perjury. The affidavit must contain the following financial information and calculations as to the respondent’s income:
(A) Net income. Total salary and wages, minus deductions required by *549 law, including court-ordered support payments.
(B) Other income. Including, but not limited to, social security benefits, union funds, veterans’ benefits, workers’ compensation, other regular support from absent family members, public or private employee pensions, unemployment compensation, dividends, interest, rent, trusts, and gifts.
(C) Assets. Including, but not limited to, cash, savings accounts, bank accounts, stocks, bonds, certificates of deposit, equity in real estate, and equity in a boat, motor vehicle, or other tangible property.
In addition to the financial information, the affidavit must contain the following statement: “I, (name of accused person), agree to report'any change in my financial situation to the court or to the indigency examiner.’’
(2) Determination. After reviewing the affidavit and questioning the respondent, the referee shall make one of the following determinations: the respondent is indigent; or the respondent is not indigent.
A respondent is indigent if:
(A) the income of the person is equal to or below 250 percent of the then-current federal poverty guidelines prescribed for the size of the household of the accused by the United States Department of Health and Human Services or if the person is receiving Aid to Families with Dependent Children (AFDC), poverty-related veterans’ benefits, or Supplemental Security Income (SSI); or
(B) the person is unable to pay for the services of an attorney without substantial hardship to his or her family-
(3) Presumption. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(A) the respondent has been released .on bail in the amount of $5,000 or more;
(B) the respondent owns, or has equity in, any intangible, or tangible personal property or real property,, or the expectancy of an interest in any such property; or
(C) the respondent retained private counsel immediately before or after filing the affidavit asserting indigency as required herein.
(c) Proceedings Before the Referee.
Proceedings before the referee shall be in accordance with the following:
(1) Venue for.the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent’s own defense. No respondent may be *550 compelled -to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) Subpoenas for the attendance of witnesses and the -'production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the con-temnor may be found, as if said refusal were a contempt of that court.
(5) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribéd.
(6) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs and restitution, if any, shall be included and entered in the judgment rendered against the respondent. The amount of restitution shall be specifically set forth in the judgment and shall not exceed the amount paid to respondent by complainants). The judgment shall also state the name of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed. The referee shall have discretion over the timing of payments, over how those payments are to be distributed to multiple complainants), and whether restitution shall bear interest at the legal rate provided for judgments in this state. In determining the amount of restitution to be .paid to complainant(s), the referee shall consider any documentary evidence that shows the amount paid to respondent by complainant(s), including cancelled checks, credit card . receipts, receipts from respondent, and any other documentation evidencing the amount of payment. Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages.
(7)Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
(d) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of “guilty,” together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief or memorandum of law, to the referee’s judgment and recommended sentence within 80 days of the date of filing with the court of the referee’s judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent’s brief or memorandum of law. The respondent may file a reply brief or memorandum of law within 10 days after service of The Florida Bar’s responsive brief or memorandum of law.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to *551 exceed $2500, imprisonment of up to 5 months, or both.
(f) Costs and Restitution. The court may also award costs and restitution.
RULE 10-9.1 PROCEDURES FOR ISSUANCE OF ADVISORY OPINIONS ON THE UNLICENSED PRACTICE OF LAW
(a) Definitions.
(1) Committee. The standing committee as constituted according to the directives contained in these rules.
(2) Petitioner. An individual or organization seeking guidance as to the applicability, in a hypothetical situation, of the state’s prohibitions against the unlicensed practice of law.
(3) Public Notice. Publication in a newspaper of general circulation in the county in which the hearing will be held and in The Florida Bar News.
(4) Court. The Supreme Court of Florida (or such other court in the state of Florida as the supreme court may designate).
(b) Requests for Advisory Opinions.
A petitioner requesting a formal advisory opinion concerning activities that may constitute the unlicensed practice of law shall do so by sending the request in writing addressed to The UPL Department, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300. The request for an advisory opinion shall state in detail alh-to the extent practicable the operative facts upon which the request for opinion is based and contain the name and address of the petitioner. The request shall be reviewed by UPL staff counsel. If the request complies with the requirements of the rule as stated herein, the request will be placed on the agenda for the next scheduled meeting of the committee. At that meeting, the committee will determine whether to accept the request, such determination being within the discretion of the committee. Should the committee accept the request, a public hearing as provided in rule 10 — 9.1(f) shall be scheduled.
(c) Limitations on Opinions. No opinion shall be rendered with respect to any case or controversy pending in any court or tribunal in this jurisdiction and no informal opinion shall be issued except as provided in rule 10 — 9.1(g)(1).
(d) Services of Voluntary Counsel. The committee shall be empowered to request and accept the voluntary services of a person licensed to practice in this state when the committee deems it advisable to receive written or oral advice regarding the question presented by the petitioner.
(e) Conflict of Interest. Committee members shall not participate in any matter in which they have either a material pecuniary interest that would be affected by a proposed advisory opinion or committee recommendation or any other conflict of interest that should prevent them from participating. However, no action of the committee will be invalid where full disclosure has been made and the committee has not decided that the member’s participation was improper.
(f) Notice, Appearance, and Service.
(1) At least 30 days in advance of the committee meeting at which a hearing is to be held with respect to a potential advisory opinion, the committee shall give public notice of the date, time, and place of the hearing, state the question presented, and invite written comments on the question. On the announced date the committee shall hold a public hearing at which any person affected shall be entitled to present oral testimony and be represented by counsel. Oral testimony by other persons may be allowed by the committee at its discretion. At the time *552 of or prior to the hearing any other person shall be entitled to file written testimony on the issue before the committee. Additional procedures not inconsistent with this rule may be adopted by the committee.
(2) The committee shall issue either a written proposed advisory opinion, a letter that declines to issue an opinion, or an informal opinion as provided in rule 10 — 9.1(g)(1). No other form of communication shall be deemed to be an advisory opinion.
(3) A proposed advisory opinion shall be in writing and shall bear a date of issuance. The proposed opinion shall prominently bear a title indicating that it is a proposed advisory opinion and a disclaimer stating that it is only an interpretation of the law and does not constitute final court action. The committee shall arrange for the publication of notice of filing the proposed advisory opinion and a summary thereof in The Florida Bar News within a reasonable time. Interested parties shall be furnished a copy of the full opinion upon request.
(g) Service and Judicial Review of Proposed Advisory Opinions.
(1) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question is not the unlicensed practice of law, it shall decide, by a vote of a majority of the committee members present, either to publish the advisory opinion as provided in rule 10 — 9.1(f)(3) as an informal advisory opinion, or to file a copy of the opinion with the court as provided in rule 10-9.1(g)(2).
(2) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question constitutes or would constitute the unlicensed practice of law, the committee shall file a copy of the opinion and all materials considered by the committee in adopting the opinion with the clerk of the court. The proposed advisory opinion, together with notice of the filing thereof, shall be furnished by certified mail to the petitioner.
(3)Within 30 days of the filing of the opinion, the petitioner may file objections and a brief or memorandum in support thereof, copies of which shall be served on the committee. Any other interested person may, within 30 days of the filing of the opinion, seek leave of the court to file and serve a brief, whether in support of or in opposition to the opinion, in accordance with this same procedure. The committee may file a responsive brief within 20 days of service of the initial brief. The petitioner, as well as other interested persons having leave of court, may file a reply brief within 10 days of service of the responsive brief. At its discretion, the court shall permit reasonable extension of these time periods. Oral argument will be allowed at the court’s discretion. The Florida Rules of Appellate Procedure shall otherwise govern the above methods of filing, service, and argument.
' (4) Upon the expiration of the time to file objections, briefs, and replies thereto, the court shall review the advisory opinion, regardless of whether any such objections are in fact made, together with any briefs or objections filed in support of or in opposition to such opinion. Upon review, it shall approve, modify, or disapprove the advisory opinion, and the ensuing opinion shall have the force and effect of an order of the court and be published accordingly. There shall be no further review of the opinion except as granted by the court in its discretion, upon petition to the court.
*553 CHAPTER 14. GRIEVANCE MEDIATION AND FEE ARBITRATION RULE
14-1. JURISDICTION AND VENUEESTABLISHMENT
RULE 14-1.1 JÜRISDICTIQNESTABLISHMENT
The Florida Bar Grievance Mediation and Fee Arbitration Program (hereinafter “the program”) is hereby established as a means to empower complainants and respondents to resolve disputes without the involvement of formal disciplinary processes.
RULE 14-1.2 JURISDICTION
(a) Written Request RequiredFee Arbitration. Circuit arbitration — eommit-teosThe program shall have jurisdiction to resolve disputes between members of The Florida Bar or between-a member of The Florida Bar and a client or clients over a fee paid, charged, or claimed for legal services rendered by a member of The Florida Bar when the parties to the dispute agree to arbitrate hereunder either by written contract or by a request for arbitration signed by all parties, or as a condition of probation or as a part of a discipline sanction as authorized elsewhere in these Rules Regulating The Florida Bar.
(b) Pending Civil Action,- Circuit arbitration committees-The program shall not have jurisdiction to resolve disputes involving matters in which a court has taken jurisdiction to determine and award a reasonable fee to a party or that involve fees charged that constitute a violation of the Rules Regulating The Florida Bar, unless specifically referred to the circuit arbitration committee program by the court or by bar counsel, respectively.
(c) Relationship Required, — Circuit arbitration committees have-jurisdiction to resolve disputes between member-s-of-The Florida-Bar or between a-member of The Florida Bar and -a client or clients onlyr
(d)Authority- to Decline Exercise -of Jurisdiction, — The chair of-a-circuit arbitration committee or-the-ehair of a panel of a circuit.-arbitration committee — witN-the consent-of the chair of-the-eircuit arbitration committee — The program shall have authority to decline jurisdiction to resolve any particular dispute by reason of its complexity and protracted hearing characteristics.
(b) Grievance Mediation. The program shall have jurisdiction to mediate the issues in a disciplinary file referred to the program in which the public interest is satisfied by the resolution of the private rights of the parties to the mediation. The program shall not have jurisdiction to resolve the issues in a disciplinary file if any issue involved in that file must remain for resolution within the disciplinary process.
RULE 14-1,2 VENUE-(-PLAGE OF HEARING)
Fee dispute resolutions shall be determined-by a fee arbitration committeeNo-cated -in-the circuit where the member-of The Florida Bar maintains a principal-office, where the -attorney performed a substantial-amount of the legal services, or where -the parties agree the matter-should be arbitrated-,
RULE 14-1.3 RULE S AUTHORITY OF BOARD OF GOVERNORS
The board of governors shall appoint a standing committee to administer the program and the board may adopt policies for implementation thereof.
RULE 14-1.4 APPLICATION OF RULES AND STATUTES
Each party to an arbitration proceeding initiated-under these rules shall be deemed to have consented to the- application — of tThe Florida Arbitration Code (chapter *554 682, Florida Statutes), shall apply to arbi-trations conducted under this chapter except as modified by or in conflict with these rules.
The Florida Rules for Certified and Courb-Appointed Mediators shall apply to proceedings under this chapter unless otherwise stated herein or in conflict -with the provisions of this rule or the Rules of Professional Conduct. A program mediator shall not report the misconduct of another member of The Florida Bar if the Florida Rules for Certified and Courb-Appointed Mediators and applicable law preclude such report.
14-2. STANDING COMMITTEE
RULE 14-2.1 GENERALLY
(a) Appointment of Members; Quorum. The board of governors shall appoint a 9-member standing committee on grievance mediation and fee arbitration not-less than one-third-of--whom shall be
(1) 6 lawyers who are supreme court certified mediators;
(2) 3 nonlawyers who are supreme court certified mediators;
(3) 6 lawyers who are certified as arbitrators under this chapter; and
(4) 3 nonlawyers who are certified as arbitrators under this chapter.
The board of governors will appoint a chair and vice-chair of the committee from the members listed above. A majority of members of the committee constitutes a quorum. The lawyer members of the committee shall have been members of The Florida Bar for at least 5 years.
(b) Terms. All members shall be appointed for 3-year terms, each term commencing on July 1 of the year of appointment and ending on June 30 of the third year thereafter. Terms shall be staggered so that one-third of the members of the committee shall be appointed each year. No committee member may serve for more than 2 consecutive full terms.
(c)Duties. The duties of the standing committee include: — shall administer the program, certify mediators and arbitrators for the program, promulgate necessary standards, forms, and documents, and make recommendations, as necessary, to the board of governors for changes in the program.
(1) prescribing — uniform—forms- and rules of procedure-for-circuit arbitration committees;
(2) recommending to the board of governors amendments to this rule;
(S)-establishing-additional circuit arbitration committees where-needed;
(4) giving advice-concerning fee arbitration matters-to officers, the board of governors, staff,'sections, or committees of The Florida Bar as requested or required;
(5) gathering -and maintaining vital statistical information ■ from the circuit arbitration committees for — use by the standing committee-board of governors, or other appropriate bodies;
(6) promoting the system; and
(7) approving administrative fees for eachecircuit arbitration committee.
14-3. CIRCUIT ARBITRATION COMMITTEES
RULE 14-3,1 GENERALLY
(a) Membership. The circuit arbitration committees shall consist of not-less than 3 members; approved-by-the' board of governors, who-practice law or reside within-fche circuit. — The-size of a circuit-arbitration committee-may be increased-as-the chair of each committee deems necessary. — At least one-third of the membership of each committee shall be-nonlawyers. — The law *555 yer members of the-eommittee shall have been members of The Florida Bar-for-at least 5 years.
(b) Nomination — and—Appointment. Voluntary bar-association presidents within-each-eircuit and the Florida-Council-of Bar Association Presidents may tender names-of-prospeetive members of the circuit-arbitration committees to the board of governors member of such-circuit -for-ree-ommendation — to-the board of governors, which-shall appoint the members. The board of governors member for each circuit shall designate a-chair-and-vice-chair for each circuit arbitration-committee.-
(c) Terms. Terms of service shall be for 1 year, beginning July 1 and ending the following June-30-with-no-member-serving more-than 3 consecutive terms. — The expiration of the term of a member shall not disqualify that member from concluding any matter pending before the member. Any member ■ may- be removed--by — the board of governors.
14-3. CERTIFICATION OF ' PROGRAM MEDIATORS
AND ARBITRATORS
RULE 14-3.1 APPLICATION REQUIRED
(a) Applications. Persons wishing to become program mediators or arbitrators shall apply to the committee for its review and certification. The committee shall promulgate standards and forms for certification hereunder. Membership in The Florida Bar shall not be required for certification.
(b) CLE Credit for Service. Members of The Florida Bar who are program mediators and arbitrators shall be entitled to a maximum of 5 hours of CLE credit in each reporting period in the area of ethics for service in the program as provided in the policies adopted under this chapter.
14-4. INSTITUTION OF PROCEEDINGS
RULE 14-4.1 GENERALLYARBITRATION PROCEEDINGS
(-a-)-€onsent, All arbitration proceedings shall be instituted by the filing of a written consent to arbitration under theses rules either by written contract or by the consent form prescribed hereinin the policies adopted under the authority of this chapter and signed by each party to the controversy. Proceedings hereunder may also be instituted by the terms of a disciplinary sanction imposed or a condition of probation entered in accord with these Rules Regulating The Florida Bar. Each of such parties shall provide the committee with a concise statement of that party’s position, including the amount claimed or in controversy, on the form prescribed and author- ■ ized by the standing committee. — Gopies-of the rules and consent forms will be supplied to the parties by the circuit arbitration committee.
(b) Attachments, If there is a written contract regarding fees between the parties, a copy of that written contract shall accompany the request or submission.
RULE 14-4.2 GRIEVANCE MEDIATION PROCEEDINGS
(a) Referral by Bar Counsel. Bar counsel, with the consent of the parties, may refer any file to the program that meets the criteria established by any policies adopted under the authority of this rule.
(b) Referral by Grievance Committees. Grievance committees, with concurrence of bar counsel and consent of the parties, may refer any file to the program that meets the criteria established by the policies adopted under the authority of this chapter.
*556 (c) Referral by Board of Governors. The board of governors, upon review of a file referred to it as authorized elsewhere under the Rules Regulating The Florida Bar, may refer same to the program if it meets the criteria established by the policies adopted under the authority of this chapter-
ed) Referral by Referees. Referees, with concurrence of The Florida Bar, may refer any file to the program that meets the criteria established by the policies adopted under the authority of this chapter. Concurrence of The Florida Bar requires agreement of bar counsel and the member of the board of governors designated to review the disciplinary matter at issue.
(e) Referral by Order, of Supreme Court of Florida. The Supreme Court of Florida may order referral of any file to the program that meets the criteria established by the policies adopted under the authority of this chapter.
14-5. RULES OF PROCEDUREEF-FECT OF AGREEMENT TO MEDIATE OR ARBITRATE AND FAILURE TO COMPLY
RULE 14-5,1 CONFIDENTIALITY
All records, documents, files, proceedings, and hearings pertaining to fee arbitration under these rules shall be made available, upon inquiry, to anyone.
RULE 14-5.1 EFFECT OF REFERRAL TO MEDIATION AND FAILURE TO COMPLY
(a) Closure of Disciplinary File. Upon referral for mediation of the issues involved in a disciplinary file, the disciplinary file shall be closed without the entry of a sanction and shall remain closed except as provided in subdivision (b), below:
(b) Effect of Respondent’s Failure to Attend or Comply. It shall be a violation of the Rules Regulating The Florida Bar for a respondent to fail to attend an agreed-upon mediation conference without good cause. Likewise, it shall be a violation of the Rules Regulating The Florida Bar for a respondent to fail to fully comply with the terms of a written mediation agreement without good cause.
(c)Effect of Complainant’s Failure to Attend. If a file referred for mediation is not fully resolved by reason of a complainant’s failure to attend without good cause, the disciplinary file based thereon may remain closed.
RULE 14-5.2 EFFECT OF AGREEMENT TO ARBITRATE AND FAILURE TO COMPLY
(a) Closure of Disciplinary File. A disciplinary file that involves only fee issues shall be closed without the entry of a sanction upon the entry of an agreement to arbitrate.
(b) Effect of Respondent’s Failure to Attend or Comply. It shall be a violation of the Rules Regulating The Florida Bar for a respondent to fail to attend an agreed-upon arbitration conference without good cause. Likewise, it shall be a violation of the Rules Regulating The Florida Bar for a respondent to fail to fully comply with the terms of an arbitration award without good cause.
(c) Effect of Complainant’s or Other Opposing Party’s Failure to Attend. If a file referred for arbitration is not fully resolved by reason of a complainant’s or other opposing party’s failure to attend without good cause, the disciplinary file based thereon may remain closed.
14-6. NATURE AND ENFORCEMENT OF AWARD
RULE 14-4261 BINDING NATURE
(a) Binding Determination. The parties to an arbitration proceeding under *557 these rules shall be bound by the determination of the circuit arbitration committee panelterms of the arbitration award subject to those rights and procedures to set aside or modify the award provided by chapter 682, Florida Statutes, or by the terms of an agreement reached in mediation.
(b) Enforcement of Determination. In addition to any remedy authorized in this chapter, Anyan arbitration award rendered-may be enforced by a court of competent-j-urisdictionas provided in chapter 682, Florida Statutes.
14-7 IMMUNITY AND CONFIDENTIALITY
RULE 14-5^1 IMMUNITY AND CONFIDENTIALITY
(a) Immunity. The members of the standing committee-and-eireuit arbitration committees, mediators, arbitrators, as well as-staff persons of The Florida Bar, and appointed voluntary counsel assisting those-the committees, mediators, and arbitrators, shall have absolute immunity from civil liability for all acts in the course of their official duties.
(b) Confidentiality of Arbitration Proceedings and Records. All records, documents, files, proceedings, and hearings pertaining to fee arbitration under these rules shall be made available, upon inquiry, to anyone. Provided, however, that an arbitrator’s mental processes shall not be subject to discovery and a panel of arbitrators may retire into executive session to consider the issues raised and to reach a decision as to an award.
(c) Confidentiality of Mediation Proceedings and Records. All records, documents, files, and proceedings pertaining to mediation under this chapter shall be made available only as provided in the Florida Rules for Certified and Court-Appointed Mediators and applicable law- ■
RULES QP PROCEDURE FOR FEE ARBITRATION PROCEEDING-SPROCEDURAL RULES
RULE I. PREAMBLE
The following rules are those standards by which circuit arbitration committees the program must conduct them-proceedings in fee arbitration matters.
RULE II. SELECTION OF ARBITRATORS
A,(a) Referral to Arbitrators. Upon the proper filing of an agreement to arbitrate or request for and notice of arbitration, or upon entry of an order by the Supreme Court of Florida requiring arbitration, the matter shall be referred by the circuit- arbitration-committee — ehah?—to—Í member of the circuit arbitration commit-teestaff of The Florida Bar to an arbitrator who- is a lawyer-who shall act as sole arbitrator when the amount in controversy is $2,500 or less. If the amount in controversy exceeds $2,500, the -circuit arbitration committee chairstaff shall refer the matter to a hearing — panel of 3 circuit. arbitration committee-menaber-sarbitrators, 1 of whom shall be designated panel chair for the case. Also, the parties may at any time stipulate to the use of 1 arbitrator to hear the case even when the amount in controversy exceeds $2,500. Upon request of 1 of the parties, and in the sole discretion of the circuit arbitration-standing committee chair, an extraordinary case involving $2,500 or less may be heard by a 3-member panel. All 3-member panels shall consist of at least 1 nonlawyer and 1 lawyer. This requirement may be waived by the parties. Also, upon request of 1 of the parties or in extraordinary circumstances, and in the sole discretion of the circuit — arbitration—standing committee *558 chair, any case involving $2,500 or less may be heard by a nonlawyer arbitrator.
Bv(b) Eligibility to Serve. It shall be the obligation of any member- of- -a-ch-cuit arbitration committee-arbitrator designated as a sole arbitrator or panel member to disclose to the circuit arbitration-committee--e-hair — any reason why the member arbitrator cannot ethically or conscientiously serve. When an mem-berarbitrator declines or is unable to serve, the- -circuit arbitration-eommitiee-efaairstaff shall designate another member-eligible to servear-bitrator. The c-ireuit-arbi-tratienstanding committee chair has the authority to remove a sole arbitrator or panel member from hearing a particular matter if, in the judgment of the chair, the member should not serve.
€,(c) Postponements. If, at the time set for hearing by a panel, the 3all members of the panel are not present, the panel chair, with the consent of the parties, may postpone the hearing or proceed with fewer than 3 members.
B»(d) Death or Inability to Serve. If any member of the panel dies or becomes unable to continue to serve while the matter is pending, but before an award has been made, a substitute panel member shall be appointed by the panel chair unless the parties consent to proceed with the hearing. If a substitute panel member is appointed, the member shall review the evidence admitted and recorded in the proceedings, if recorded. If not recorded, the review shall consist of an examination of evidence admitted and oral summary by the panel chair followed by argument thereon from the parties.
Er(e) Powers of Arbitrators. The members-of the circuit arbitration committee selected as aArbitrators of any dispute shall be vested with all the powers and shall assume all the duties granted and imposed upon arbitrators in accordance with chapter 682, Florida Statutes.
F,(f) Time. The panel or the sole arbitrator assigned shall hold the hearing within 45 days after receipt of the assignment and shall render the award within 10 days after the close of the hearing, unless extended by the chair of the circuit arbi-teatienstanding committee for good cause. Failure of an arbitrator or panel to comply with these time requirements shall not otherwise divest the arbitrator or panel of the authority to conduct proceedings authorized by these policies and applicable rules.
RULE III. RECORD OF PROCEEDINGS
Any party may provide, at the party’s cost, the service of a stenographer to record the proceedings. If the proceedings are transcribed, the arbitrators shall be promptly provided with a copy that shall be open to inspection by all of the parties to the arbitration. By stipulation of the parties, the proceedings may be recorded by tape recorder or other electronic means.
RULE IV. HEARINGS
A»(a) Setting and Notice of Hearing. The chair of the panel or the sole arbitrator, as the case may be, shall coordinate with the parties and panel members and thereafter fix a time and place for the hearing and shall cause written notice thereof to be served personally or by registered or certified mail on the parties to the arbitration at the address stated on the consent to arbitration form not less than 10 days before the hearing. A party’s appearance at a scheduled hearing shall constitute a waiver of any deficiency in the notice of hearing.
*559 IL(b) Absence of Party. The arbitration may proceed in the absence of a party who, after notice, fails to attend or to obtain a postponement from the panel chair or sole arbitrator. Postponement, however- shall only be granted upon good cause shown. Despite the absence of a party or parties, no award shall be made without the submission of evidence to support the claim.
C,(c) Representation by Counsel. Each party has the right to be represented by counsel at any arbitration hearing.
P,(d) Presentation of Evidence. If all parties to the controversy so agree, they may waive an evidentiary hearing and may submit their positions and contentions in writing, together with exhibits, if any, to the arbitrators who shall render a final decision based on the information before them within 10 days of the recelpt-of such writings and exhibits. The arbitrators shall require all parties and witnesses to be sworn before they testify. The arbitrators, if they so desire, may request opening statements and prescribe the order of proof. In any event, all parties shall be afforded a reasonable opportunity for the presentation of any evidence. Depositions shall be allowed only for the perpetuation of testimony. All other pre-hearing discovery is prohibited. The procedures for subpoenas and witness attendance shall be as prescribed in section 682.08, Florida Statutes as amended. . Subpoenas may be enforced as provided in section 682,08, Florida Statutes, or as elsewhere provided in chapter 3 of the Rules Regulating The Florida Bar.
Fb(e) Right of Party to Attend. All parties shall have the right to attend all hearings. The exclusion of other persons or witnesses shall be within the discretion of the arbitrators.
JA(f) Chair — toPresideing Arbitrator. The arbitrators shall select 1 of their members as chair. The chair of the panel or the sole arbitrator shall preside at the hearing and shall rule on the admission and exclusion of evidence and on questions of procedure, and shall exercise all powers relating to the ■ conduct of the hearing. The hearing should be informal in nature without strict observance of the rules of evidence or the Florida Rules of Civil Procedure.
G»(g) Factors to Consider Regarding Reasonable Fees. In reaching their decision, the arbitrators may consider all factors they deem relevant, including but not limited to the intention and understanding of the parties at the time the representation was undertaken' as well as those factors for determining the reasonableness of a fee enumerated in rules 4 — 1.5(b) and (c), Rules of Professional Conduct.
RULE V. CLOSING OF HEARINGS
The arbitrators shall specifically inquire of all parties whether they have any further evidence to submit in whatever form. If the answer is in the negative, the hearings shall be closed. The circuitfee arbitration-committee files shall be preserved for a period of 1 year from the date of submission of the award to the parties. Upon closure of the hearing, the arbitrator(s) may retire into executive session to consider the issues raised and reach a decision as to an award. The mental processes of the arbitrator(s) employed in reaching an award shall not be subject to discovery or use in any proceeding.
RULE VI. THE AWARD
The decision of the arbitrators shall be expressed in a written award on the form prescribed by the standing committee, signed by the arbitrators, which shall include a brief explanation of the basis of the *560 award and shall be submitted to the parties. If there is a dissent, it shall be signed separately but the award shall be binding if signed by a majority of the arbitrators. Unless the agreement to arbitrate or request for and notice of arbitration provides otherwise, the arbitrators may grant any lawful relief, including specific performance. An award may also be entered upon the consent of all the parties. Once the award is signed, the hearing may not be reopened except upon consent of all parties and the. chair or sole arbitrator. The award may be confirmed, set aside, modified, or corrected only in accordance with chapter 682, Florida Statutes, as amended.
RULE VII. ENFORCEMENTSTAN-DARDS FOR CERTIFICATION AND TRAINING
If an award is made to-a-nonlawyer client and the respondent member- of-The Florida Bar refuses to comply — the-chair-of fee — circuit—arbitration—committee—shall make every reasonable-effort-to -find- an attorney member- of the-commlftee-or-oth-e-r-volu'nteer — member of The Florida Bar at-no-eost to the client, other than actual litigation — expenses,—to—represent—sufe client — fe—enforcing—or—defending—such award in accordance with chapter 682, Florida-gtatutes as amended. — Fee arbitration awards -cannot -be enforced or set aside without-a-cour-t-proceeding. pursuant to-theFlor-ida-Arbitration-Gode.-Such-pro-ceedings-begin-wife-a^-pefition-or-npplication to the-appropriate court to confirm or set aside the award.
(a)Eligibility. Persons eligible to - be program arbitrators are:
(1) retired judges and justices of the courts of the State of Florida;
(2) persons who were members of circuit fee arbitration committees at the time of or prior to the merger of the grievance mediation and fee arbitration programs;
(3) persons who have served on a circuit grievance committee for 1 year or more; and
(4) any other person who, in the opinion of the committee, possesses the requisite education, training, or certification in alternative dispute resolution to be a program arbitrator.
If an applicant is a member of The Florida Bar, such member must have been a member for a minimum of 5 years, be a member in good standing, and have no pending recommendation of minor misconduct or finding of probable cause to be eligible for appointment as a program arbitrator.
(b) Training. Prior to being certified as program arbitrators, applicants for program arbitrator who have not served as an arbitrator in formal arbitration proceedings in the 3 years prior to application, or served 1 year as a grievance committee member, shall attend an orientation conference at which persons experienced in bar disciplinary matters shall discuss disciplinary procedures.
(c) Certification. The committee may certify applicants as program arbitrators if they meet the eligibility requirements stated above, have completed the training set forth in these policies, have been recommended for certification by the program arbitrator with whom the applicant participated in the co-arbitration required by the training provision of these policies, and have agreed to accept at least 2 referrals per calendar year.
The committee may decline to certify applicants who:
(1) do not meet the eligibility requirements set forth above;
*561 (2) do not possess the- required training; or
(3) have been found guilty of, pled guilty to, or been disciplined for misconduct that, in the opinion of the committee, renders those persons inappropriate for service as program arbitrators.
(d) Removal of Certification. A certified arbitrator shall not receive additional referrals where probable cause has been found against the arbitrator until the case has been disposed of. The standing committee may revoke certification of a program arbitrator for any reason that the committee might use to deny initial certification, and for any other reason that the committee believes would render a program arbitrator unfit.
(e) Reimbursement of Expenses. Program arbitrators shall not be compensated for time devoted to or travel incurred in connection with an arbitration conducted hereunder. Program arbitrators may be reimbursed for out-of-pocket expenses that include, but are not limited to: court reporter fees; telephone calls; photocopying fees (at a maximum of $.25 per page); and translation services.
RULE VIII. DEATH OR INCOMPETENCE OF A PARTY
In the event of the death or adjudication of incompetency of a party to the arbitration proceedings during the course of arbitration but prior to the rendering of a decision, the proceeding shall abate upon the suggestion of death of a party or notice of adjudication of incompetency of a party to the chair, unless the personal representative or the guardian of the party consents to go forward. In the event of death or incompetence of a party after the close of the proceedings but prior to a decision, the decision rendered shall be binding upon the heirs,'administrators, or executors of the deceased and on the estate and guardian of the incompetent.
RULE 17-1.2 DEFINITIONS
(a) Authorized House Counsel. An “authorized house counsel” is any person who:
(1) is a member in good standing of the entity governing the practice of law of each state (other than Florida), territory, or the District of Columbia in which the member is licensed;
(2) is not subject to a — disciplinary proceeding — oran outstanding order of reprimand, censure or disbarment, permanent or temporary, for professional misconduct by the bar or courts of any jurisdiction at the time of application for
(3) is not subject to a disciplinary proceeding;
. (34) has not been permanently denied admission to practice before the bar of any jurisdiction based upon such person’s character or fitness- at-the-time-of application for registration under — this chapter; .
(45) agrees to abide by the Rules Regulating The Florida Bar (including, without limitation, rules 6-10.1 et seq.) and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposés;
(56) is, at the date of application-fog registration under -thls-r-ul% residing in Florida and exclusively employed by a business organization located in the state of Flbrida or relocating to the state of Florida in furtherance of such employment within 6 months of such application under this chapter and receives or shall receive compensation for activities performed for that business organization;
(67) has complied with rule 17-1.4.
*562 (b) Business Organization. A “business organization” for the purpose of this rule is a corporation, partnership, association or other legal entity (taken together with its respective parents, subsidiaries, and affiliates) authorized to transact business in this state that is not itself engaged in the practice of law or the rendering of legal services outside such organization, whether for a fee or otherwise, and does not charge or collect a fee for the representation or advice other than to entities comprising such organization by the activities of the authorized house counsel. For purposes of this rule, a “business organization” does not include a governmental entity, governmental subdivision, political subdivision, school board, or any other entity that has the authority to levy a tax.
RULE 17-1.4 REGISTRATION
(a) Filing with The Florida Bar. The following shall be filed with The Florida Bar by an individual seeking to be certified as authorized house counsel:
(1) A certifícate from an entity governing the practice of law of aeach state, territory, or the District of Columbia in which the registrant is licensed to practice law certifying that the registrant:
(A) is a member in good standing; and
(B) has a clear disciplinary record as required by subdivision 17-1.2(a)(2);
(2) a sworn statement by the registrant that the registrant:
(A) has read and is familiar with the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
(B) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined in ehap-ter 3 of the Rules Regulating The Florida Bar and rule 17-1.76 herein, and authorizes notification to or from the entity governing the practice of law of each state, territory, or the District of Columbia in which the registrant is licensed to practice law of any disciplinary action taken against the registrant; and
(C)is not subject to a disciplinary proceeding or outstanding order of reprimand, censure, or disbarment, permanent or temporary, for professional misconduct by the bar or courts of any jurisdiction at the time of application — fe?—registration—under—this chapter;
(3) a certificate from a business organization certifying that: it is qualified as set forth in subdivision 17 — 1.2(b); that it is aware that the registrant is not licensed to practice in Florida; and it is not relying upon The Florida Bar in any manner in employing the authorized house counsel;
(4) an appropriate registration application to The Florida Bar as promulgated by the executive director of The Florida Bar; and
(5) an appropriate remittance of a filing fee prescribed and set by the executive director of The Florida Bar in an amount not to exceed the amount applicable for admission to the bar examination for an attorney licensed in a state other than Florida.
(b) Review by The Florida Bar. Upon receipt of the items set forth in subdivision 17-1.4(a), The Florida Bar shall review the items for compliance with this chapter. Any application not meeting the requirements of this chapter shall be sent back to the applicant. Grounds for return include, but are not limited to, filing certificates that do not contain all of the information set forth in subdivision 17-1.4(a), filing a *563 certificate from a business organization that does not qualify as a business organization as defined by these rules, and failure to remit the appropriate fee.
(c) Certification by Court. Upon review of the application by The Florida Bar, The Florida Bar shall file with the clerk of . the Supreme Court of Florida the name and address of those registrants complying with the provisions of subdivision 17-1.4(a) along with a request that the registrant be certified as authorized house counsel. Permission for authorized house counsel to perform services under this rule shall become effective upon approval of the request for certification by the clerk of the Supreme Court of Florida for a person' employed in Florida or, if the registrant is not yet in Florida, the effective date of employment but not later than 6 months from the filing of the items set forth above.
(d) Annual Registr-ationRenewal. The registration pursuant to this section shall be annual in a manner consistent with that applicable to an attorney licensed to practice in the state of Florida including the annual fee therefor as if such authorized house counsel was so licensed, provided, however, such renewal shall include a statement that the certificate filed under subdivision 17-1.4(a)(l)-(3) with the initial registration are current-and-v-alidthe registrant is in good- standing in all states or United States territories in which licensed and is not subject to any disciplinary pro- - ceedings.
RULE 17-1.7 TRANSITIONIMMU-NITY FROM PROSECUTION
(-a-)-Pr-ior-Commis&ion-of-Unli^eftscfi Practice of Law. The commission of the unlicensed practice of law by an applicant for ■■ registration as-an-authorized- house eeunseb-under this rule prior to the effective date of this rule shall not be grounds for the denial of registration of such applicant-if-appiieation-for-registr-ation is made withi-n-6-mon-fhs-o-f-the-effective date of this-rule.
(b) Immunity From Procescution. An authorized house counsel who has been duly registered under this rule shall not be ■ subject to prosecution for the unlicensed practice of law for acting as counsel to a business organization prior to the effective date of this rule.